LILLIAN FLYNN *vs.* EDWARD J. HURLEY
(and a companion case[1]).

Middlesex.   Norfolk.   November 5, 1954. — February 4, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Negligence*, Gross, Motor vehicle, Trench, Obstruction of way, Contributory. *Way*, Public: obstruction. *Municipal Corporations*, Liability for tort, Highways.

The bare fact that the operator of an automobile falls asleep at the wheel does not show gross negligence on his part.   [185–186]

Evidence that at night on a "dark" street a mound of earth piled about three feet high along a trench and extending about two thirds of the way across the street was left by a town lighted only by two dim red lights at one end of it, and that an automobile whose operator observed the lights to his left when "he got right on top of it" and "didn't have a chance" to stop collided with the mound and he was injured warranted a finding of negligence on the part of the town toward him and did not require a ruling that he was guilty of contributory negligence.   [187–188]

Two ACTIONS OF TORT.   Writs in the District Court of Natick dated October 1, 1948, and in the Superior Court dated April 6, 1949, respectively.

Upon removal of the first action to the Superior Court, the actions were tried together before *Nagle*, J.

*Monto Rosenthal*, for Flynn.

*Christopher W. Sloane*, for Hurley.

*E. John Ferrazzi*, Town Counsel, & *Dewey C. Kadra*, for town of Framingham.

SPALDING, J.   These are two actions of tort.   In one the plaintiff Flynn seeks to recover for personal injuries sustained by her on May 9, 1948, when an automobile in which she was a passenger and which was being operated by the defendant Edward J. Hurley struck an obstruction on Waverly Street, Framingham, and collided with a pole. The other action is brought by Edward J. Hurley against

---

[1] The companion case is Edward J. Hurley *vs.* Town of Framingham.

the town of Framingham to recover for personal injuries
and property damage. The declaration of the plaintiff
Flynn contains four counts but the only one now relied on
is the second, which alleges gross negligence. The declara-
tion of the plaintiff Hurley in the action against the town
contains four counts. Counts 1 and 2 are brought under
G. L. (Ter. Ed.) c. 84, §§ 1 and 15, and counts 3 and 4
are based on the common law. In each action the judge
directed a verdict for the defendant on all counts and the
plaintiffs' exceptions to this action bring the cases here.

We summarize the evidence as follows:

On May 6, 1948, the sewer department of the town of
Framingham made an excavation in Waverly Street of that
town for the purpose of installing a sewer line from the
main line in the center of the street into a building of the
Waverly Glass & Mirror Company. The owner of the
building paid the town for this work. Waverly Street,
which is a public way, is straight and level and at the place
of the accident it is 47 feet wide from curb to curb. The
excavation made by the sewer department started at the
northerly curb in front of the mirror company's building
and extended 27 feet toward the middle of the road; it was
about 4 feet wide and 5 feet deep, and sand and gravel
were piled on both sides of it to a height of about 3 feet,
forming an obstruction or mound. This mound of earth
extended about two thirds of the way across the road.

About midnight on May 9, 1948, the plaintiff Flynn, who
will hereinafter be called the plaintiff, was riding as a pas-
senger in the front seat of an automobile owned and oper-
ated by Edward J. Hurley, who, because he is both a plain-
tiff and a defendant in these actions, will hereinafter be
called Hurley. Hurley drove down to Framingham Center
to let off another passenger and while going there he at
times drove 50 miles an hour and at other times 40. The
plaintiff asked him to slow down and he did so for a little
while and then speeded up again. After letting the other
passenger off he drove down to Framingham, proceeding on
Union Avenue to Concord Street. He then turned from

Concord Street into Waverly Street and as he came down Waverly Street his speed was between 40 and 50 miles per hour. The plaintiff asked him what the hurry was and he slowed down to about 30 but then speeded up again to 50. The plaintiff then saw red lights across the road about a quarter of a mile away. The road at that point "is a straight-away" and she continued to notice the lights as they went along. There were a dozen or more lights and they were on horses along the side of a ditch. As Hurley approached the lights he did not steer off to the right of the road. He "passed two or three cars" and "stayed on the left" side. When 25 feet away from the lights, the plaintiff looked over to speak to Hurley and saw that he was asleep. She screamed, and "they went into the ditch."

A police officer, who went to the scene of the accident about 12:29 in the morning of May 9, 1948, testified as follows: Waverly Street was well lighted. There were five wooden horses, three on the easterly side and two on the westerly side. Each horse had two red kerosene lanterns and these were lighted. There was a broken horse in the ditch and another out in the street. Hurley's automobile was at a bus pole 160 feet away. Its front was practically demolished and the bumper "with a lantern wrapped around it" was up against the pole. The distance from the excavation to the southerly curb was 18 feet and there were skid marks going 160 feet from the southerly curb to the bus pole.

Hurley testified that he could not recall any traffic along Waverly Street from the time he turned the corner up to the time of the accident; that at no time did he turn to the left of the highway to pass any vehicles; that Waverly Street was dark; that as he approached the place where the accident happened he observed two dim red lights when he "got right on top of it"; that his automobile could have stopped within 50 feet, but "he didn't have a chance to"; that he believed he struck a mound of sand; that "if there were lights there, there would be nothing to prevent his seeing a mound three feet high"; and that when he struck

the mound of sand the operating apparatus under the steering wheel went out of control and the automobile collided with a pole and he became unconscious. Hurley denied that he had fallen asleep at any time prior to the accident.

1. We shall consider first the action brought by the plaintiff Flynn against Hurley. Since the plaintiff was riding with Hurley as his guest she could recover only on proof of gross negligence. *Massaletti* v. *Fitzroy*, 228 Mass. 487. The evidence mainly relied on to establish such negligence is the fact that the plaintiff, when the automobile was about 25 feet from the excavation, observed that Hurley was asleep. Relying on the case of *Blood* v. *Adams*, 269 Mass. 480, the plaintiff argues that this was sufficient to warrant a finding of gross negligence. There it was said at page 482, "Voluntarily to drive an automobile on a public street at any time of day or night with eyes closed, or to yield to sleep while operating such kind of dangerous machine as is an automobile on a public highway, is to be guilty of a degree of negligence exceeding lack of ordinary care, and is a manifestation of recklessness which may be found by judge or jury to be gross negligence within any reasonable definition of that phrase." This language carries the connotation that falling asleep at the wheel of an automobile without more would warrant a finding of gross negligence. Later cases, however, have stated the rule less stringently. In *Carvalho* v. *Oliveria*, 305 Mass. 304, 305–306, it was said, "Without undertaking to lay down a rule that falling asleep is always evidence of gross negligence, at least it may be said that the danger of driving while heavy with drowsiness is so extreme and so self-evident that one who, with knowledge that he is in that condition, persists in driving without making the necessary effort fully to arouse himself can be found to be grossly negligent." This language has been quoted with approval in subsequent decisions. *Belletete* v. *Morin*, 322 Mass. 214, 217. *Mullaney* v. *White*, 329 Mass. 464, 466. See also *Moore* v. *Patrone*, 298 Mass. 198, 200. In all of these cases, where it was held that a finding of gross negligence was warranted, there was evidence of intermit-

tent drowsiness or sleep. In other words, there was something more than mere falling asleep. It is possible that sleep may sometimes overtake its victim unawares and we think that it would be going too far to say that falling asleep without more is evidence of gross negligence. To the extent that the case of *Blood* v. *Adams*, 269 Mass. 480, is authority for the proposition that merely falling asleep at the wheel is evidence of gross negligence we are not disposed to follow it. We prefer the rule enunciated in *Carvalho* v. *Oliveria*.

But the plaintiff argues that the evidence shows that Hurley had been asleep for a considerable period of time, and in support of this argument directs our attention to the facts that Hurley was on the left side of the road just prior to the accident and that was due to the fact that he was asleep; that although there was evidence of traffic on Waverly Street Hurley could not recall any; that Hurley stated that the street was dark whereas there was evidence that the street was lighted; and that Hurley saw neither the horses nor the mound of earth. All of this, the plaintiff urges, is evidence of the fact that he had been asleep for a considerable period prior to the accident. But the test in determining the issue of gross negligence is not the length of time that a person at the wheel has been asleep but whether he fell into that condition in circumstances where he might have taken steps to avoid it. The evidence here does not go beyond the mere showing that Hurley had fallen asleep. Apart from the matter of sleep there is no evidence of gross negligence. It follows that in the opinion of a majority of the court the judge rightly directed a verdict for Hurley.

2. We now turn to the case of Hurley against the town of Framingham. As stated above counts 1 and 2 are based on G. L. (Ter. Ed.) c. 84, §§ 1 and 15, which impose a duty on the town to keep the public ways reasonably safe and convenient for travellers; counts 3 and 4 are based on the common law. The basis for asserting liability at common law is the fact that the town in installing the sewer line was not acting in a governmental capacity but rather was engaged in a commercial undertaking. See *Green* v. *West*

*Springfield,* 323 Mass. 335; *Galluzzi* v. *Beverly,* 309 Mass. 135. What the differences may be between the liability of the town under the statute and its liability at common law need not concern us. Hurley argues that the question to be decided is whether the town used reasonable care to warn him by use of adequate lighting or other means of the excavation and the mound of sand, and that the common law duty of the town in this respect was basically the same as its duty under the statute. We shall deal with the case on that footing.

In performing the work undertaken by it without closing the street the town had the duty, by means of barriers, lights, or other suitable devices, to warn Hurley of the unsafe portion of the way. Such warnings were especially necessary during periods of darkness. *Winship* v. *Boston,* 201 Mass. 273, 275. *Sullivan* v. *Saugus,* 305 Mass. 127, 130-131. Can it be said that the evidence warranted a finding that the town failed to perform that duty here? On the basis of the testimony of the plaintiff Flynn it would appear that the town had performed that duty. She testified that she "saw red lights across the road when they were a quarter of a mile away"; that there were a dozen or more which were on horses from the beginning of the ditch out to the end of it; and that the road lights were lighted. But Hurley was not bound by this testimony. He testified that Waverly Street "was a dark road"; that up to the vicinity of where the accident occurred there was one small light; that when "he got right on top of it he observed two dim red lights in the center of the road"; that these lights were to his left; that when he observed them he started to slow down; and that from the time he observed the red lights to the time he struck the ditch about a second elapsed. We think that on Hurley's evidence it could have been found that the town had not provided a sufficient warning. According to his testimony there were lights only on the north end of the obstruction and none on the south side of it, which would be the right side of the road as he was proceeding. Moreover there

were only two of these and they were dim. We think that there was a case for the jury and that the jury could have found that the town was negligent in failing to provide lights across the entire obstruction or mound in the road. *Sullivan* v. *Saugus,* 305 Mass. 127, 131. It cannot be said as matter of law that Hurley was guilty of contributory negligence. The judge, therefore, erred in directing a verdict for the town.

In the case of Flynn v. Hurley the exceptions are overruled; in the case of Hurley v. Town of Framingham the exceptions are sustained.

*So ordered.*