**STATE of Vermont v. Chad S. FREE**

[749 A.2d 622]

No. 99-183

February 17, 2000. Defendant was charged with grossly negligent operation of a motor vehicle, death resulting. See 23 V.S.A. § 1091(b). He filed a motion to dismiss for lack of a prima facie case, pursuant to V.R.Cr.P. 12(d), arguing that the facts could not support a finding of gross negligence. The district court granted defendant's motion and held that the case would proceed on the theory of negligent operation. See 23 V.S.A. § 1091(a). The State requested permission to appeal, which the court granted. See 13 V.S.A. § 7403(b). On appeal, the State argues that the court erred because the evidence was sufficient to allow a reasonable jury to conclude that defendant was guilty of grossly negligent operation. We affirm.

In reviewing a V.R.Cr.P. 12(d) motion to dismiss for lack of a prima facie case, we view the evidence in the light most favorable to the State, while excluding modifying evidence, in order to determine

whether the State has "'produced evidence fairly and reasonably tending to show the defendant guilty beyond a reasonable doubt.'" *State v. Dixon*, 169 Vt. 15, 17, 725 A.2d 920, 922 (1999) (quoting *State v. Fanger*, 164 Vt. 48, 51, 665 A.2d 36, 37 (1995).

Here, the relevant facts are not in dispute. On September 29, 1998, defendant was driving down Main Street in Bennington, Vermont, during daylight hours. He was traveling at thirty miles an hour, consistent with the posted speed limit, and slowed down to approximately ten to fifteen miles an hour as he entered the intersection of Main and Morgan Streets. Just before defendant turned left onto Morgan Street, he noticed a van on his left stopped at a stop sign on Morgan, waiting to cross Main Street. However, he did not notice Arthur Lemieux, who was walking across Morgan Street, in front of the van, in a well-marked crosswalk. As defendant turned on to Morgan Street, his car struck Lemieux. Lemieux was injured and died three months later, allegedly as a result of injuries sustained in the accident. Defendant was not aware of Lemieux's presence until his car actually hit Lemieux. According to an accident reconstructionist who testified at the motion hearing, Lemieux had walked about three-quarters of the way across the twenty-eight-foot crosswalk when he was struck by defendant's car. He further testified that the average person walks four-and-a-half feet per second. Therefore, he concluded that Lemieux had been in the crosswalk for four to five seconds prior to being hit by defendant's car. The State argues that these facts tend to show that defendant is guilty beyond a reasonable doubt of grossly negligent operation.

Gross negligence is defined as "conduct which involved a gross deviation from the care that a reasonable person would have exercised in that situation." 23 V.S.A. § 1091(b)(2). The Legislature adopted this language to implement our holding in

*State v. Beayon*, 158 Vt. 133, 605 A.2d 527 (1992). See *State v. Koch*, 171 Vt. ___, 760 A.2d 505 (2000) (mem.). In *Beayon*, we held that an earlier version of § 1091, which provided for prosecution of vehicular homicide, "require[d], at a minimum, a mens rea of criminal negligence." *Id.* at 136, 605 A.2d at 528. There, we explained that, to prove criminal negligence under § 1091, the State must show (1) the defendant disregarded a risk of injury or death, and (2) the risk was such that — considering the nature and purpose of the defendant's conduct and the circumstances known to him — the defendant's failure to perceive it was a gross deviation from the standard of care that a reasonable person would have exercised in the same situation. See *id.* It is this latter language upon which the Legislature seized in formulating the standard of negligence required for a § 1091(b) conviction. *Koch*, 171 Vt. at ___, 760 A.2d at 506.

In the civil context, we have emphasized that gross negligence is more than a mere error in judgment, loss of presence of mind, or momentary inattention. Rather, it is an indifference to the duty owed to another, and the failure to exercise even a slight degree of care. See *Hardingham v. United Counseling Service*, 164 Vt. 478, 481, 672 A.2d 480, 482 (1995). See also *Shaw, Adm'r v. Moore*, 104 Vt. 529, 531, 162 A. 373, 374 (1932) ("Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence. . . . It is a heedless and palpable violation of legal duty respecting the rights of others.").

The question of whether a defendant was grossly negligent is generally left to the factfinder. See *Hardingham*, 164 Vt. at 481, 672 A.2d at 483. However, where reasonable minds cannot differ, the court can decide the question as a matter of law. See *id.*

According to the State, this case rises above ordinary negligence, into the level

of gross negligence, because defendant was inattentive for about five seconds. However, as the court noted, the evidence showed that it took defendant one to two seconds to turn on to Morgan Street from Main Street, during which time defendant was paying attention to the flow of traffic around him. Therefore, if Lemieux had been in the crosswalk for four to five seconds, and defendant was paying attention to the flow of traffic for one to two seconds as he was making his turn, defendant was inattentive to Lemieux for, at most, three to four seconds. Thus, the question before us is whether, under the facts of this case, a jury could find beyond a reasonable doubt that defendant's inattention to Lemieux for three to four seconds was a gross departure from the standard of care that a reasonable person would observe in his situation, thereby constituting gross negligence.

This Court has examined the concept of grossly negligent operation of a motor vehicle in two recent cases. In *State v. Devine*, 168 Vt. 566, 719 A.2d 861 (1998) (mem.), the evidence, viewed in the light most favorable to the State, showed that, for several days before the accident, the defendant drank alcohol, smoked marijuana, and got little sleep. On the day of the accident, he had difficulty staying awake and, in fact, shortly before the accident, fell asleep in his car. Further, on the day of the accident, road conditions and visibility were good. Immediately before the accident, the defendant was speeding, crossed the double yellow line and crossed two lanes of oncoming traffic. Without attempting to slow down or move out of the way, the defendant drove straight into another car, killing the driver. Immediately after the accident, the defendant did not realize that his car had struck another vehicle. We held that these facts were sufficient to support a finding that the defendant was guilty of grossly negligent operation. See *Devine*, 168 Vt. at 567, 719 A.2d at 863.

In *Koch*, the evidence, viewed in the light most favorable to the State, showed that the defendant was driving during daylight hours, with good road conditions and good visibility. He had an unobstructed line of sight of 1200 feet and should have been able to see the victim standing at the side of the road for at least twenty seconds prior to the accident. We held that these facts were sufficient to support a finding that the defendant was guilty of grossly negligent operation. See *Koch*, 171 Vt. at __, 760 A.2d at 507.

Both of these cases involved more than a mere error in judgment, loss of presence of mind, or momentary inattention. In *Devine*, the defendant was tired, was speeding, crossed two lanes of traffic, and did not realize that he had hit another car. In *Koch*, the defendant had been inattentive for at least twenty seconds prior to striking the victim with his car.

Here, by contrast, there was no evidence that defendant was speeding at any time, that he drove through a red light or a stop sign, that he was under the influence of any intoxicating substances, or that he was inattentive to anything other than Lemieux. We have found no case, either in Vermont or in any other jurisdiction, where a defendant's inattention for three to four seconds, without any other indicia of negligence, was held to be sufficient to support a conviction of grossly negligent operation. See *Plummer v. State*, 702 A.2d 453, 465 (Md. Ct. Spec. App. 1997) (defendant not grossly negligent where evidence showed he drifted onto shoulder of road, then on to curb, and killed pedestrian); *People v. Maloof*, 678 N.Y.S.2d 175, 176 (App. Div. 1998) (defendant not grossly negligent where she failed to see pedestrians and drifted on to shoulder of road); *Commonwealth v. Heck*, 535 A.2d 575, 576 (Pa. 1987) (facts insufficient to establish gross negligence where defendant made left-hand turn and struck motorcycle); *Lewis*

*v. Commonwealth*, 179 S.E.2d 506, 507 (Va. 1971) (defendant's car struck and killed pedestrian; court held that, under facts of case, failure to keep a proper lookout, without other acts of negligence, was insufficient to prove gross negligence).\*

We conclude that, under the circumstances of this case, evidence of defendant's inattention to a pedestrian for three to four seconds indicates, at best, a mere error in judgment, loss of presence of mind, or momentary inattention. It does not, however, indicate an indifference to the duty owed to another, or the failure to exercise even a slight degree of care, as is required for a conviction of gross negligence. See *Hardingham*, 164 Vt. at 481, 672 A.2d at 482. Therefore, we hold that the evidence presented by the State is not sufficient to carry its burden under § 1091(b)(2).

*Affirmed.*

**Dooley, J.,** dissenting. I argued in the dissent in *Hardingham v. United Counseling Service*, 164 Vt. 478, 487, 672 A.2d 480, 486 (1995) (Dooley, J., dissenting), that, based on our experience in applying our guest-passenger statute, it was difficult, if not impossible, to perform in a principled fashion the line-drawing required to determine whether negligence could be found to be "gross" in a partic-

---

\*The State relies on three cases, all of which are inapposite. *State v. Elliott*, 8 A.2d 873 (Del. Ch. 1939), was merely a publication of a trial court's instruction to the jury. In *State v. Allen*, 112 A.2d 40, 43 (Del. Super. Ct. 1955), the court granted defendant's motion to strike the charge of driving "in wilful or wanton disregard for the safety of persons or property." Finally, *State v. Overkamp*, 865 S.W.2d 376 (Mo. Ct. App. 1993), involved an ordinary negligence standard. See *id.* at 377.

ular case. I urged that the only reasonable course is to "leave the decision of whether gross negligence was present to the jury except in the most extreme cases." *Id.*

This is not a most extreme case. It might be distinguished from our decision in *State v. Koch*, 171 Vt. __, 760 A.2d 505 (2000), in degree, but not in kind. On this point, I agree with Justice Johnson's observation in dissent in *Koch* that the decisions in this case and *Koch* are "irreconcilable." *Id.* at __, 760 A.2d at 509. In both cases, defendant ran down a pedestrian who was in a lawful place in or near the road. In *Koch*, defendant had a longer period to view the spot where the pedestrian was standing, when struck, but there was no evidence that the pedestrian was in that spot during the entire period of observation. In any event, I do not find the time of observation as significant as the majority because in this case defendant *was turning across a pedestrian crosswalk*. Obviously, a driver's duty to watch the road is related to the circumstances that confront him and the place and manner of operation. See *Emery v. Small*, 117 Vt. 138, 140-41, 86 A.2d 542, 543 (1952) (collision with parked truck could be found to be gross negligence where, at night, defendant had up to 4.5 seconds to see it). It is one thing to say that a few seconds of inattention is not gross negligence as a matter of law when a driver is proceeding along a straight, dry road during the day; it is quite another to say so, when the driver is turning across a pedestrian crosswalk. In this case, it is as if defendant closed his eyes and then turned left into Morgan Street and proceeded across the crosswalk and up that street without opening them.

If I were a juror, I would probably vote for the majority result. As a Justice of this Court, however, I must vote to allow the jury to decide.