2006 VT 105

**STATE of Vermont v. Corey J. VALYOU**

[910 A.2d 922]

No. 05-571

¶ 1. October 11, 2006. The State charged defendant with one count of grossly negligent operation of a motor vehicle, with serious injury resulting, as a result of his falling asleep while driving and causing an accident. 23 V.S.A. § 1091(b). Defendant successfully moved to dismiss under V.R.Cr.P. 12(d), and the State appealed. The district court found that defendant's admission that he felt drowsy and had fallen asleep "a couple of times" while driving shortly before his accident was not, as a matter of law, sufficient evidence of gross negligence as required by statute. We disagree, and reverse and remand.

¶ 2. The evidence upon which the district court relied is as follows: At around 4:30 a.m. on the morning of August 1, 2005, defendant set out from Westford, Vermont on his way to Rutland, where he planned to be at work by 6:30 a.m. On Route 7 in Salisbury, he fell asleep at the wheel of his moving vehicle. He traveled across the oncoming lane of traffic and collided with another vehicle, resulting in substantial injuries to the other driver. Defendant was awakened only by the impact of the crash. Later, he told the investigating officer that he had been feeling drowsy during his commute. He also stated: "I nodded off a couple of times, I usually do and I wake myself back up but that morning I didn't."

¶ 3. The State charged defendant with one count of grossly negligent operation with serious injury resulting pursuant to 23 V.S.A. § 1091(b). Defendant moved to dismiss, contending that the State could not make out a prima facie case of gross negligence. V.R.Cr.P. 12(d). The trial court found that despite being a "close case" involving "something more than mere falling asleep," defendant was correct. In reaching this conclusion the district court relied on two cases from other jurisdictions, *Clancy v. State*, 829 N.E.2d 203 (Ind. Ct. App. 2005), and *Hargrove v. Commonwealth*, 394 S.E.2d 729 (Va. Ct. App. 1990). Based on these cases, discussed herein, and an interest in drawing a "clear distinction" between ordinary and gross negligence, the court concluded that "to continue driving under the circumstances of knowing one is drowsy or prone to falling asleep is negligent. But it is not, by itself, grossly negligent."

¶ 4. We review questions of law de novo. *State v. Damon*, 2005 VT 54, ¶ 6, 178 Vt. 564, 878 A.2d 256 (mem.). In reviewing a dismissal under Rule 12(d), we examine the evidence in the light most favorable to the State, and determine whether the evidence, excluding the effects of modifying evidence, would fairly and reasonably tend to show beyond a reasonable doubt that defendant committed the offense. *Id.* ¶ 9.

¶ 5. We are not the first court to note the difficulty in demarcating the bounds of degrees of negligence. Under our statutes, gross negligence is "conduct which involve[s] a gross deviation from the care that a reasonable person would have exercised in that situation." 23 V.S.A. § 1091(b)(2). Negligence is a breach of the duty to exercise ordinary care. *Id.* § 1091(a)(2). In distinguishing the two, we have said that gross negligence "amounts to a failure to exercise even a slight degree of care," and that it requires more than "an error in judgment, momentary inattention, or loss of presence of mind." *Peck v. Gluck*, 113 Vt. 53, 55, 29 A.2d 814, 815 (1943). We have found that failure to observe a pedestrian for three to four seconds while the de-

fendant driver focused on oncoming traffic was no more than simple negligence, *State v. Free*, 170 Vt. 605, 607-08, 749 A.2d 622, 624-25 (2000) (mem.), while failure to observe a pedestrian when the defendant driver had an "unobstructed view of the accident site for almost 400 yards, along a relatively straight stretch of road, during daylight hours, and amidst relatively light traffic," was grossly negligent. *State v. Koch*, 171 Vt. 515, 516-17, 760 A.2d 505, 506 (2000) (mem.). As the Supreme Court of Florida has observed with respect to its own hierarchy of negligence: "Different degrees of negligence are far easier to demonstrate than to define." *Carraway v. Revell*, 116 So. 2d 16, 19 (Fla. 1959). Similarly, we have said that "[t]he presence or absence of gross negligence turns upon the particular factual circumstances of each case, and therefore rests within the special province of the jury." *Koch*, 171 Vt. at 516, 760 A.2d at 506. Ultimately, the difference between gross and ordinary negligence is brought into relief through the facts of each case.

¶ 6. There are some guideposts in cases of this type. As the trial court held, falling asleep at the wheel does not, in and of itself, constitute gross negligence. On the other hand, when a driver is on sufficient notice as to the danger of falling asleep but nevertheless continues to drive, the driver's subsequent failure to stay awake may be grossly negligent. To continue to drive in these circumstances marks a disregard for the risk of injury to such a degree so as to constitute "a gross deviation from the standard of care that a reasonable person would have exercised in [defendant's] situation." 23 V.S.A. § 1091(b)(2).

¶ 7. Supreme courts that have addressed the issue of sleeping drivers have reached these conclusions uniformly. The Supreme Judicial Court of Massachusetts rejected a per se rule that falling asleep while driving, without more, was grossly negligent in favor of a failure-to-heed-warnings standard. Thus it held: "It is possible that sleep may sometimes overtake its victim unawares and we think that it would be going too far to say that falling asleep without more is evidence of gross negligence." *Flynn v. Hurley*, 124 N.E.2d 810, 813 (Mass. 1955). The court went on to hold: "'it may be said that the danger of driving while heavy with drowsiness is so extreme and so self-evident that one who, with knowledge that he is in that condition, persists in driving without making the necessary effort fully to arouse himself can be found to be grossly negligent.'" *Id.* (quoting *Carvalho v. Oliveria*, 25 N.E.2d 764, 765 (Mass. 1940)). The factual difference between *Flynn* and *Carvalho* is enlightening. In *Flynn*, the court found no evidence that the defendant was on notice of the risk of falling asleep such that he could have taken steps to avoid it; the evidence was merely that he had been steadily asleep at the wheel for a period of time before the accident. *Id.* Thus, there was insufficient evidence of gross negligence. *Id.* In *Carvalho*, on the other hand, the court found sufficient facts of gross negligence where the defendant had admitted that he felt sleepy and had "dozed off several times" in the course of his journey. *Carvalho*, 25 N.E.2d at 765; see also *Boos v. Sauer*, 253 N.W. 278, 279 (Mich. 1934) ("To constitute gross negligence in falling asleep while driving there must have been such prior warning of the likelihood of sleep that continuing to drive constitutes reckless disregard of consequences. . . . [P]rior warning may be by way of having before gone to sleep or dozed off."); *Smith v. Williams*, 178 P.2d 710, 717 (Or. 1947) (finding a triable issue of gross negligence where defendant had driven fifty miles an hour over a gravel road when he "knew he was sleepy and notwithstanding this knowledge continued to drive and did go to sleep.").

¶ 8. Even the cases upon which the trial court relied reach the same conclusion. See *Hargrove*, 394 S.E.2d at 731-32 (finding defendant not grossly negligent where he "had not fallen asleep, [and] had not previously dozed during the trip before the accident"); *Clancy*, 829 N.E.2d at 207 ("If the driver has had some prior warning as to the likelihood of falling asleep but continues to drive, such may be considered willful or wanton misconduct," but "[t]he act of falling asleep at the wheel of an automobile, standing alone, is generally held to permit, at most, an inference of negligence.") (Internal quotations omitted.).*

¶ 9. The instant case presents sufficient evidence that defendant disregarded clear warnings that he was likely to fall asleep; indeed, he permitted himself to doze off "a couple of times" before his accident. This was plainly more than "momentary inattention." *Peck*, 113 Vt. at 55, 29 A.2d at 815. The State's allegations suggest that defendant failed to exercise "even a slight degree of care" to avoid the obvious risks of falling asleep at the wheel. *Id.* A jury could find that defendant's conduct in these circumstances was a gross deviation from the care we would expect of a reasonable person in this situation. Accordingly, it was an error to dismiss the State's charge.

*Reversed and remanded.*

---

* Defendant has cited two additional cases in his brief, *Kaplan v. Kaplan*, 239 N.W. 682 (Iowa 1931), and *De Shetler v. Kordt*, 183 N.E. 85 (Ohio Ct. App. 1931), but neither involves clear prior warnings of drowsiness.