939 A.2d 482 (2007)
2007 VT 81
Joseph SALATINO and Judith Salatino
v.
David S. CHASE, Brianne E. Chase and Vermont Associates in Ophthalmology.
No. 05-506, 06-101.
Supreme Court of Vermont.
August 31, 2007.
*483 Jacob B. Perkinson, James F. Conway, III and Stacey K. Porter of Johnson & Perkinson, South Burlington, Michael F. Hanley and Paul J. Perkins of Plante & Hanley, P.C., White River Junction, and John P. Maley and Christopher J. Maley *484 of Sylvester & Maley, Inc., Burlington, for Plaintiffs-Appellants/Cross-Appellees.
John D. Monahan, Jr. and Angela R. Clark of Dinse, Knapp & McAndrew, P.C., Burlington, for Defendants-Appellees/Cross-Appellants.
Present: REIBER, C.J., JOHNSON and SKOGLUND, JJ., and WESLEY, Supr. J. and MARTIN, Supr. J. (Ret.), Specially Assigned.
REIBER, C.J.
¶ 1. In these consolidated appeals, plaintiffs Joseph and Judith Salatino appeal the trial court's denial of their motion to certify a limited-fund class action. Defendants David and Brianne Chase and Vermont Associates in Ophthamology appeal the court's order requiring notice of the certification decision to the putative class members, the content of the notice, and the manner of giving notice. Plaintiffs appeal the court's order allocating the costs of providing notice. Because plaintiffs did not establish the prerequisites for maintaining a limited-fund class action, we affirm the decision denying class certification. We reverse the superior court's decision to provide notice of the class-certification decision to putative class members. Because we hold that notice is not required, we do not reach defendants' claims regarding the content and manner of providing notice, nor do we consider plaintiffs' appeal of the cost-allocation order.
¶ 2. David Chase was a licensed ophthalmologist who ran Vermont Associates in Ophthamology with his wife Brianne Chase, a licensed optician. Dr. Chase was licensed in Vermont from 1968 until July 2003, when the Medical Practice Board suspended his license based on evidence that Dr. Chase had performed unnecessary cataract surgeries. In December 2003, the State requested that the Board revoke Dr. Chase's license on the basis that he had falsified patient records, pressured patients to have unnecessary cataract surgery, performed unnecessary surgeries, and engaged in other unprofessional conduct in the treatment of at least fourteen patients. Based on similar facts with respect to thirty-five patients, Dr. Chase was indicted by a federal grand jury on eighty-one criminal counts in September 2004. He was ultimately acquitted of all but two of the criminal counts. The United States of America, together with the State of Vermont, also filed a civil complaint against Dr. Chase in May 2005 for submitting false claims to federal and state health programs for at least thirty-three patients. That complaint was voluntarily dismissed without prejudice nine months later.
¶ 3. Plaintiffs were patients of Dr. Chase beginning in 1978. They commenced this action in July 2003, shortly after Dr. Chase's medical license was suspended. Plaintiffs' second amended complaint, filed in December 2003, included a class-action claim under the Vermont Consumer Fraud Act (CFA). 9 V.S.A. §§ 2451-2480n. Plaintiffs' initial complaint did not demand class certification. In March 2004, plaintiffs moved for class certification of the CFA claim under V.R.C.P. 23(b)(3), arguing that issues of fact and law common to the class predominated over individual questions. A year later, the court denied certification, finding that the CFA claim principally raised issues needing individualized proof. Consequently, the court found that common issues did not predominate, as the rule requires, and that allowing the action to proceed as a class action would not achieve judicial economy. Plaintiffs did not appeal that denial and did not move to notify putative class members of it.
¶ 4. Shortly after the court denied certification of the CFA claim under the predominance *485 rule, plaintiffs moved to certify a limited-fund class for all of their claims, under V.R.C.P. 23(b)(1)(B). Those claims included the CFA claim and common-law claims of medical negligence, lack of informed consent, negligent misrepresentation, negligent supervision, battery, and intentional infliction of emotional distress. The court denied the limited-fund class-certification motion, holding that plaintiffs had not met three of the four prerequisites for maintaining a class action under Rule 23(a). The court held that plaintiffs had not established the size of the class because it was unclear whether the class comprised all of defendants' former patients or only those who received unnecessary cataract surgery. Citing the earlier order denying the predominance class certification for the CFA claim, the court also held that plaintiffs' medical-malpractice claim was not suited for class treatment because it would have to be established by examining "the individual circumstances of class member[s]." Further, the court held that plaintiffs had not shown that limited-fund class certification was proper under Rule 23(b)(1)(B), and that the named plaintiffs might be in conflict with other class members. Plaintiffs appealed from the denial.[1]
¶ 5. Plaintiffs also moved for approval to provide notice of the denial to the putative class members. Plaintiffs argued that the media coverage of Dr. Chase's license suspension and the subsequent litigation against him caused absent putative class members to rely on the nascent class action to protect their legal interests. The superior court, citing "the court's obligation to safeguard the interests of absent class members," granted plaintiffs' motion and approved notice of the class-certification decision to putative class members under Rule 23(d)(2). The court reasoned that "the mere possibility that any of the media coverage surrounding Dr. Chase caused putative class members to rely on this suit suggests that notice is appropriate." In two later orders, the court established: (1) the content of the notice, (2) that notice would be given individually by first-class mail, and (3) that plaintiffs would bear the cost. Defendants appealed all three orders, contesting whether notice was appropriate at all, the manner of providing notice, and the content of the notice. Plaintiffs appealed the cost allocation. We first review the superior court's analysis of the suitability of limited-fund class certification.

I. The limited-fund class action
¶ 6. Our review of the class-certification decision has two aspects: we conduct a de novo review of the legal standards employed, and if the proper legal standards were used, we review the trial court's application of those standards for abuse of discretion. See Heerwagen v. Clear Channel Commc'ns, 435 F.3d 219, 225 (2d Cir.2006). Plaintiffs contend, citing Heerwagen, that "a denial of class certification is accorded noticeably less deference than . . . a grant of certification." We disagree with plaintiffs on this point, and decline to construe Vermont Rule 23 as the Second Circuit construed the analogous federal rule in that case.[2]
*486 ¶ 7. A mandatory class may be certified under Rule 23(b)(1)(B) when the prerequisites of Rule 23(a)numerosity, commonality, typicality, and adequacyare satisfied and
(1) the prosecution of separate actions by . . . individual members of the class would create a risk of
. . . .
(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.
V.R.C.P. 23(b).[3] Vermont's rule mirrors the federal rule in every respect relevant here, see F.R.C.P. 23(b), and we therefore look to federal precedent to aid our interpretation of our rule.[4]
¶ 8. The U.S. Supreme Court has analyzed the federal limited-fund rule at some length in a recent case, Ortiz v. Fibreboard Corp., 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999). The Ortiz Court noted that, although Rule 23(b)(1)(B) also encompasses several other varieties of class actions, "[o]ne recurring type of such suits was the limited fund class action, aggregating `claims . . . made by numerous persons against a fund insufficient to satisfy all claims.'" Id. at 834, 119 S.Ct. 2295 (quoting Advisory Committee Notes, F.R.C.P. 23). As the superior court noted in denying plaintiffs' motion for limited-fund class certification, the Ortiz Court identified three characteristics of cases appropriate for limited-fund treatment under the rule. Id. at 838-41, 119 S.Ct. 2295.
¶ 9. First, "the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims." Id. at 838, 119 S.Ct. 2295. This inadequacy is the sine qua non of a limited-fund class action; without a demonstration of insufficiency, binding absent class members would be unnecessary; the absent class members would be able to recover fully in separate actions. Id. at 838-39, 119 S.Ct. 2295; In re Joint E. & S. Dist. Asbestos Litig., 982 F.2d 721, 739 (2d Cir.1992) (limited-fund class certification appropriate to avoid prejudice to those who file later, where fund likely to be exhausted by earlier filers). Courts have adopted two different standards to determine the inadequacy of an asserted limited fund: (1) "inescapable" risk of fund exhaustion, In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig., 693 F.2d 847, 851-52 (9th Cir.1982); and (2) "substantial probability," Trautz v. Weisman, 846 F.Supp. 1160, 1169 (S.D.N.Y.1994). The United States Supreme *487 Court declined in Ortiz to decide which standard was appropriate because it determined that the Ortiz plaintiffs failed to meet either standard. 527 U.S. at 848 n. 26, 119 S.Ct. 2295.
¶ 10. "Second, the whole of the inadequate fund [is] to be devoted to the overwhelming claims." Id. at 839, 119 S.Ct. 2295. This requirement ensures that limited-fund treatment does not "give a defendant a better deal than seriatim litigation would have produced." Id. Third, the Ortiz Court required that "the claimants identified by a common theory of recovery [be] treated equitably among themselves." Id. The Ortiz Court characterized these attributes initially as "at least a sufficient set of conditions to justify binding absent members of a class under Rule 23(b)(1)(B)," id. at 838, 119 S.Ct. 2295, but went on to conclude that "there are good reasons to treat these characteristics as presumptively necessary, and not merely sufficient." Id. at 842, 119 S.Ct. 2295 (emphasis added).
¶ 11. We have noted as a general matter that "class actions are intended to be of limited and special application, not to be casually resorted to or authorized." George v. Town of Calais, 135 Vt. 244, 245, 373 A.2d 553, 554 (1977). This is particularly true of the mandatory class actions authorized by Rule 23(b)(1)(B), because class members are bound by the judgment or settlement obtained even if they do not participate in the action. See Reporter's Notes, V.R.C.P. 23 (members of a 23(b)(1)(B) class "cannot opt out because the very purpose of the action is to obtain a judgment that binds all in the class."). As the Reporter's Notes imply, mandatory class actions are fundamentally in tension with constitutional guarantees and therefore should not be liberally allowed. Ortiz, 527 U.S. at 845-47, 119 S.Ct. 2295; see also Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 612-13, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) ("Rule 23's requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure `shall not abridge, enlarge, or modify any substantive right.'") (quoting the Rules Enabling Act, 28 U.S.C. § 2072(b)). Our Rules Enabling Act, 12 V.S.A. § 1, is nearly identical to the federal act, with which the Amchem Court was concerned. For these reasons, we construe Rule 23(b)(1)(B) narrowly.
¶ 12. Here, the trial court correctly concluded that the burden was on plaintiffs to show that they satisfied the Ortiz requirements. First, then, it was plaintiffs' burden to show that the total of the aggregated liquidated claims exceeded the fund available to satisfy them. See Ortiz, 527 U.S. at 838, 119 S.Ct. 2295. Plaintiffs contend that their aggregate claim for attorney's fees arising from their CFA claims exceeds the total amount of funds available to satisfy the claims. Plaintiffs assert that defendant's $21 million insurance policy will be exhausted by a total claim for fees and costs of over $25 million. The $25 million figure was derived by multiplying plaintiffs' estimate of the number of claimants633by plaintiffs' estimate that each claimant would be entitled to recover $40,000 in legal fees and costs. Plaintiffs assert that the attorney's fees are liquidated for purposes of satisfying the Ortiz requirement. The superior court, without analysis, characterized the fees as liquidated, but then concluded that plaintiffs' "fundamental stumbling block" in meeting their burden was their calculation of the number of class members entitled to a fee award. Because we affirm the result on a different basis, see Hudson v. Town of East Montpelier, 161 Vt. 168, 170, 638 A.2d 561, 563 (1993), we do not consider *488 the question of the number of class members.
¶ 13. We conclude that the CFA-based attorney's fees are not liquidated. The trial court concluded that "the only liquidated claim Plaintiffs present is their statutory claim for attorneys' fees and costs under the [CFA]." As a general matter, a liquidated claim is one whose amount is "settled or determined, [especially] by agreement." Black's Law Dictionary 949 (8th ed.2004).
¶ 14. The CFA provides that a prevailing plaintiff "may . . . recover from the seller, solicitor, or other violator . . . reasonable attorney's fees." 9 V.S.A. § 2461(b). "Where a court finds that the [CFA] has been violated, it is not within the court's discretion to determine whether to award such fees . . . but rather its task is to determine what constitutes reasonable fees in each instance." L'Esperance v. Benware, 2003 VT 43, ¶ 21, 175 Vt. 292, 830 A.2d 675 (citation omitted). Trial courts determine reasonable attorney's fees by making a preliminary determination of the number of hours reasonably expended on the case, multiplying that number by a reasonable hourly rate, and then adjusting the result based on several factors. Id. ¶ 22. We afford the trial court "wide discretion" in determining reasonable fees. Human Rights Comm'n v. LaBrie, Inc., 164 Vt. 237, 251, 668 A.2d 659, 669 (1995).
¶ 15. Although the parties have cited no cases directly on this point, and our research reveals none, we note that other courts have concluded, for purposes of prejudgment-interest awards, that attorney's fees are not liquidated until fixed by the trial court following discretionary calculations similar to those detailed above. See, e.g., State v. Ehrlander, 1998 WL 34347991 (Alaska 1998) (unreported mem.) (upholding trial court denial of prejudgment interest on attorney's fees because "the claim for attorney's fees was not liquidated until reduced to judgment"); Asian Imports, Inc. v. Pepe, 633 So.2d 551, 553 (Fla.Dist.Ct.App.1994) (trial court erred in awarding plaintiff attorney's fees without affording defendant an opportunity to be heard on the issue of their amount; "an item of damages for `reasonable attorney's fees' is not liquidated"). Plaintiffs cite only a decision from the Bankruptcy Appellate Panel of the Ninth Circuit Court of Appeals for the proposition that the class members' attorney's fees are liquidated. In that case, the court decided that certain attorney's fees were subject to "ready determination" and therefore were "liquidated" for purposes of determining Chapter 13 bankruptcy eligibility. In re Wenberg, 94 B.R. 631, 634-35 (9th Cir. BAP 1988). But that determination was only possible in Wenberg because the fees at issue had already been incurred and billed; although the parties disputed the precise amount, it was susceptible to calculation by the court. Id. The Wenberg decision was a limited one, and we decline to extend it to this very different factual context. Plaintiffs here are simply speculating about future fees and costs to be incurred. Those fees are not, like the fees in Wenberg, subject to "ready determination."
¶ 16. Like the Ortiz Court, we need not decide whether plaintiffs must show a "substantial probability" of fund exhaustion, or that "allowing the adjudication of individual claims will inescapably compromise the claims of absent class members." Ortiz, 527 U.S. at 848 n. 26, 119 S.Ct. 2295. Plaintiffs met neither standard, and the trial court properly declined to certify the class.

II. Notice
¶ 17. The second question presented for our review is whether the trial *489 court erred in approving notice of the class certification denial to putative class members. Defendants argue, first, that Rule 23(d)(2) does not grant the court authority to order notice after it has decided not to certify a class. Whether the rule provides such authority is a question of law, which we review de novo. State v. Valyou, 2006 VT 105, ¶ 4, 180 Vt. ___, 910 A.2d 922 (mem.). Defendants' second argument is that if the court had legal authority to use Rule 23(d)(2) after denying class certification, it erred by approving notice to putative class members under the circumstances of this case. The permissive language of Rule 23(d) vests the trial court with discretion to order notice, and we review the court's decision for abuse of that discretion.

a. Authority under Rule 23(d)(2)
¶ 18. The threshold question is whether a court can use Rule 23(d)(2) to order notice to putative class members after it has decided that an action cannot be maintained as a class action. The rule states:
In the conduct of actions to which this rule applies, the court may make appropriate orders: . . . (2) requiring, for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or otherwise to come into the action.
V.R.C.P. 23(d)(2). Defendants argue that the phrase "actions to which this rule applies" limits the scope of Rule 23(d) to certified class actions. They also argue that, as soon as a court rules against class certification, the action stops being even a "putative class action," and the court can no longer rely on Rule 23(d) to make any orders relating to the action. Defendants emphasize that the rule is directed at "members of the class" and note that when no class has been certified there are no class members for the court to protect. On this reading, a court could use Rule 23(d)(2) only when a certified class exists and not before certification, or upon decertification, or when certification is denied. But this reading is unduly restrictive and contrary to the court's role as protector of absent class members' interests. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809-10, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); Am. Pipe & Consts. Co. v. Utah, 414 U.S. 538, 552, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) (stating that "potential class members are mere passive beneficiaries of the action" prior to the trial court's certification determination). Both the Advisory Committee Notes and the bulk of federal court decisions allow discretionary notice to uncertified classes under Rule 23, and we concur that notice may be proper under certain circumstances. We conclude, however, that the trial court erred in ordering notice under the facts presented here.
¶ 19. There are few decisions applying Rule 23(d)(2) in circumstances similar to those presented here, but many appellate courts have allowed (or ordered) courts to use Rule 23(e) to provide notice of a dismissal or compromise to putative members of an uncertified class. Doe v. Lexington-Fayette Urban County Gov't, 407 F.3d 755, 761-62 (6th Cir.2005) (requiring notice of dismissal to putative class members under Rule 23(e) after class certification denied).[5] *490 The circuit courts have generally held that if a court finds "that the putative class members are likely to be prejudiced on account of a settlement or dismissal, the district court should provide Rule 23(e) notice." Doe, 407 F.3d at 762. Rule 23(e) is a notice provision that applies only to dismissal or settlement and mandates notice, while Rule 23(d)(2) can relate to any aspect of a class action and is discretionary. Rule 23(e) notice to members of a certified class is required because when a previously certified class action is dismissed or settled, it will have a res judicata or collateral estoppel effect on class members. But courts also allow discretionary application of Rule 23(e) to uncertified classes, similar to the superior court's application of Rule 23(d)(2) here.
¶ 20. While most courts allow discretionary use of the Rule 23 notice provisions, defendants cite two federal district court cases in support of their plain-language theory. Street v. Diamond Offshore Drilling, No. 00-1317, 2001 WL 883216, of *1 (E.D.La. July 30, 2001) (holding that Rule 23(d)(2) cannot be used to notify putative class members); Rineheart v. Ciba-Geigy Corp., 190 F.R.D. 197, 200 (M.D.La. 1999) (holding that Rule 23(e) cannot be used to notify putative class members). Street relies entirely on Rineheart for its reasoning and holding. Street, 2001 WL 883216, of *1. Rineheart, in turn, cites the Fifth Circuit's holding in Pearson as the main basis for concluding that Rule 23 notice cannot be provided when the court has not certified a class. Pearson v. Skydell, 522 F.2d 171, 177 (5th Cir.1975). But Pearson does not absolutely deny courts discretion to provide notice to putative class members under Rule 23. Pearson turned on its facts: the trial court had denied certification, and following that denial, the named plaintiffs settled with the defendants. Two named plaintiffs, who had attempted to revoke their stipulation to the settlement, then argued that the court erred in enforcing terms of the settlement, and the S.E.C., as amicus curiae, argued that the court had erred by failing to require Rule 23(e) notice of the proposed settlement to the putative class members. Id. at 176. But there was no showing of prejudice to, or reliance by, putative class members. Accordingly, the Pearson court held that "where a court has ruled . . . that an action cannot properly be maintained as a class action the notice requirements of Rule 23(e) do not apply, at least where the dismissal and settlement of the action do not directly affect adversely the rights of individuals not before the court." Id. at 177. Pearson authorizes courts to weigh the rights and interests of absent putative class members; accordingly, it undercuts defendants' theory. Indeed, the Sixth Circuit cites Pearson for the rule that, where prejudice or collusion may occur, courts must use Rule 23(e) to notify putative class members of a dismissal or settlement even after they have denied class certification. Doe, 407 F.3d at 761-62.
¶ 21. Pearson quotes a statement from the Advisory Committee Notes to Rule 23 that appears to support defendants' position: "`a negative determination [of class action status] means that the action should be stripped of its character as a class action.'" Pearson, 522 F.2d at 177 (quoting F.R.C.P. 23, Advisory Committee Notes). But the Advisory Committee went on to state that "[w]hether the court should require notice to be given to members of the class of its intention to make a *491 determination [of class certification], or of the order embodying it, is left to the court's discretion under subdivision (d)(2)." F.R.C.P. 23, Advisory Committee Notes. The Advisory Committee envisioned that courts should make discretionary use of Rule 23(d)(2) in the exact situation presented here. The superior court correctly decided that Rule 23(d)(2) allows courts discretion to order notice of class-certification denial to putative class members.

b. Discretionary notice
¶ 22. Although the court had authority to provide notice to putative class members under Rule 23(d)(2), it remains to determine whether it properly exercised its discretion. The procedural and factual history of this case, and the policy reasons against court-approved notice to putative class members, which we outline below, substantially narrow the trial court's discretion here. "Abuse of discretion occurs when that discretion is exercised on grounds or for reasons clearly untenable, or to an extent clearly unreasonable." In re Halnon, 174 Vt. 514, 517, 811 A.2d 161, 165 (2002) (mem.). The superior court exercised its discretion on grounds that are clearly untenable by concluding that notice to putative class members was appropriate because here "there is a significant risk of prejudice" to class members unaware that the denial of class certification restarts the running of the statutes of limitation on their claims against defendants. We find no legal or factual basis for holding that there was any risk of prejudice to putative class members in this case, and absent such a risk, notice of class-certification denial was inappropriate.
¶ 23. Ordering notice to putative class membersin addition to precipitating litigation of notice issuesimposes substantial time burdens and costs on the parties and the courts, as evidenced by the six months spent by the superior court determining the form, manner, and cost allocation of notice here. Notice can "be an exceedingly costly burden, and many times it is not necessary to protect the class." Glidden v. Chromalloy Am. Corp., 808 F.2d 621, 627 (7th Cir.1986). Additionally, many courts have recognized that ordering notice to putative class members absent evidence of reliance would promote barratry and could suggest that the court had made merits-based determinations about the action. Street, 2001 WL 883216, at *1; Marian Bank v. Elec. Payment Servs., Inc., No. 95-614-SLR, 1999 WL 151872, of *2 (D.Del.1999); Rineheart, 190 F.R.D. at 201; Maddox & Starbuck, Ltd. v. British Airways, 97 F.R.D. 395, 397 (S.D.N.Y. 1983); Cherner v. Transitron Elec. Corp., 201 F.Supp. 934, 936 (D.Mass.1962). The Advisory Committee warned that notice "should not be used merely as a device for the undesirable solicitation of claims." F.R.C.P. 23, Advisory Committee Notes. Given these countervailing interests, notice of class-certification denial is only appropriate when the denial may "affect adversely the rights of individuals not before the court." Pearson, 522 F.2d at 177.
¶ 24. The main reason to order notice after denial of class certification is to ensure that putative members are not unfairly prevented from having their claims heard. While a pending class action does not bar individuals from filing separate claims, they may refrain from doing so and rely on the class action to protect their interests. To promote this practice, which furthers efficiency of litigation and helps avoid unnecessary filings, the filing of a class action tolls the statutes of limitation for the class claims of all putative class members. Am. Pipe & Constr. Co. v. Utah, 414 U.S. at 551, 553-54, 94 S.Ct. 756. But once a court denies class certification, the statutes of limitation run again. *492 Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983). The concern expressed by the superior court and plaintiffs here is that if these individuals do not learn that class certification has been denied they will not know that the limitation period is again running, and they may miss the opportunity to have their claims adjudicated.
¶ 25. While some potential plaintiffs may lose their chance to litigate by letting the statutes of limitation expire on their claims against Dr. Chase, absent a showing of reliance on the pending action, there is no risk that putative class members will be prejudiced if the court does not approve of notice that it has denied class certification. The superior court suggests that merely restarting the running of the statutes of limitation prejudices class members. But rather than being prejudiced, putative class members benefitted from the American Pipe rule, which tolled the statutes of limitation while the class action was pending. Bantolina v. Aloha Motors, Inc., 75 F.R.D. 26, 32 (D.Haw.1977). Restarting the limitation period does not prejudice the putative class members; they are free now, as they have been the entire time that the class action was pending, to initiate an action against defendants. And unlike dismissals or settlements of certified class actions, the denial of class certification has no effect on any putative class member's legal interests. Putative class members will only be prejudiced by not receiving notice that class certification is denied when they are reasonably relying on the pending class action to protect their interests. The court's discretion to provide notice of class certification denial to putative class members must be exercised only in that situation. Otherwise, the burdens, costs, and barratry concerns surrounding notice weigh more heavily than the need to protect an uncertified class. See, e.g., Maddox & Starbuck, 97 F.R.D. at 397; Elias v. Nat'l Car Rental Sys., Inc., 59 F.R.D. 276, 276 (D.Minn.1973); see also Simer v. Rios, 661 F.2d 655, 665 (7th Cir.1981) (rejecting the "absolute application" of Rule 23(e) to provide notice in the precertification context because the high costs and time delay of notice "may be injurious to the interests of the putative class members").
¶ 26. In this case, there were no actions by the court that could have caused reasonable reliance by putative class members on plaintiffs' suit, and there is no evidence that any class members were in fact relying on the suit. There was never a decision in favor of class certification; the court twice denied class certification, under two different provisions of Rule 23. Neither the court nor the attorneys provided notice to putative class members of plaintiffs' class claim. Likewise, neither the court nor the attorneys provided putative class members with notice that plaintiffs had moved for class certification, either under the predominance theory or the limited-fund theory. Additionally, plaintiffs have not submitted any evidence that the court or any of the attorneys had been contacted about the litigation by putative class members, or that there are putative class members who actually relied on the litigation. The only evidence of reliance might be inferred from the media coverage of Dr. Chase, but no actual evidence was introduced.
¶ 27. Plaintiffs argue that the coverage of defendant's license suspension, Medical Practice Board proceedings, criminal charges, and civil litigation was sufficient to engender reasonable reliance on the class action by putative class members. We disagree with plaintiffs' contention that media coverage of defendants' legal troubles provides a sufficient basis for putative class members to reasonably rely on *493 the action. This media coverage is particularly ill-suited for engendering reliance because none of it directly addressed plaintiffs' suit, and only a few newspaper articles mentioned the attempted class action. None of the coverage stated that a class action existed. Media coverage like this is not a sufficient basis for finding that putative class members will be prejudiced if they do not receive notice of denial of class certification. Because there was no risk of prejudice under these facts, ordering notice was an abuse of the court's narrow discretion.
¶ 28. Because notice was not proper, we do not reach the appeals regarding the content of the notice, the manner of providing notice, or the cost allocation.
Affirmed in part and reversed in part.
NOTES
[1] Although the superior court's entry order does not mention the battery and infliction-of-emotional-distress claims explicitly, the court seems to have dealt with the certification question as applied to plaintiffs' claims as a group. Because plaintiffs do not claim error with respect to this issue, and because it would not change the outcome of this appeal, we do not address it. See Banker v. Dodge, 126 Vt. 534, 537, 237 A.2d 121, 124 (1967) (points not advanced on appeal not subject to review).
[2] Neither the Heerwagen court nor any of the line of cases preceding it offer any reason that a denial of class certification should be scrutinized more closely than a grant. The original case in this line, Abrams v. Interco, Inc., 719 F.2d 23, 28 (2d Cir.1983), states only that "[a]buse of discretion can be found far more readily on appeals from the denial or grant of class action status than where the issue is, for example, the curtailment of cross-examination or the grant or denial of a continuance." (Emphasis added.) The Abrams court based this statement on the fact that "[t]he courts have built a body of case law with respect to class action status." Id. We take no issue with the statement in Abrams, but we are not convinced that the subsequent mutation of the Abrams standard is well founded.
[3] In view of our disposition of the Rule 23(b) question, we do not reach any of the claims of error involving Rule 23(a).
[4] The forthcoming minor amendments to federal Rule 23, which will be effective December 1, 2007, do not alter Rule 23(b) in any material respect. See Committee Note, F.R.C.P. 23, Order of April 30, 2007, U.S. Order 07-30 (changes to Rule 23 "are intended to be stylistic only").
[5] See also Birmingham Steel Corp. v. TVA, 353 F.3d 1331, 1339 (11th Cir.2003); Culver v. City of Milwaukee, 277 F.3d 908, 914-15 (7th Cir.2002); Crawford v. F. Hoffman-La Roche Ltd., 267 F.3d 760, 764-65 (8th Cir.2001); Diaz v. Trust Territory of Pac. Islands, 876 F.2d 1401, 1408, 1409 (9th Cir.1989); Shelton v. Pargo, Inc., 582 F.2d 1298, 1315 (4th Cir. 1978); Pearson v. Skydell, 522 F.2d 171, 177 (5th Cir.1975).