NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2015 VT 102

No. 2013-480

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Timothy P. Perley | March Term, 2015 |

James R. Crucitti, J.

William H. Sorrell, Attorney General, and Sarah Katz and John Treadwell, Assistant Attorneys
  General, Montpelier, and James A. Hughes, Franklin County State's Attorney, St. Albans, for
  Plaintiff-Appellee.

Matthew F. Valerio, Defender General, Rebecca Turner, Appellate Defender, and
  Sidney Wilson, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.


PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **EATON, J.**   Defendant appeals from his conviction for refusing to submit to an evidentiary test, having previously been convicted of driving under the influence.  He argues that the court should have granted his motion for judgment of acquittal because the State failed to prove the "reasonableness" of the State's request for an evidentiary breath test beyond a reasonable doubt.  We affirm.

¶ 2.    Defendant was charged with numerous crimes in March 2013, including: leaving the scene of an accident; violating conditions of release; operating with a suspended license;

driving under the influence (DUI), third offense; and refusing to submit to an evidentiary test. Defendant pled nolo contendere to the first three charges.

¶ 3.     In July 2013, defendant moved to dismiss the DUI #3 and the test-refusal charges under Vermont Rule of Criminal Procedure 12(d) for lack of a prima facie case.  Defendant argued that the State lacked substantial admissible evidence that he had consumed alcohol at the time he was observed operating a vehicle.  Given this, he argued that the DUI #3 charge must be dismissed.  For the same reason, defendant asserted that the test-refusal charge must be dismissed because the officer lacked "reasonable grounds" to believe that he was operating while intoxicated.

¶ 4.     In an August 2013 entry order, the court granted defendant's motion in part and denied it in part.  It found as follows.  The State alleged that at 12:05 p.m. on the date in question, defendant was observed operating a motor vehicle on a public highway and he was involved in a motor vehicle accident in Enosburg.  Defendant fled the scene, and police finally located him at 2:00 p.m. outside the courthouse in St. Albans, exiting his father's car.  Defendant showed signs of intoxication and he was arrested.

¶ 5.     The trial court found that, despite the inferences that might be drawn from defendant's refusal to submit a breath sample, the State did not argue that it had substantial admissible evidence to support the DUI #3 charge.  For this reason, the court dismissed the DUI #3 charge.  As to the test-refusal charge, the court found sufficient evidence to show that defendant refused a law enforcement officer's reasonable request for an evidentiary test where the officer had reasonable grounds to believe that the person was driving under the influence. The court found that the officer had information that defendant was operating a motor vehicle in a negligent manner, that he struck another vehicle, fled from the scene and nearly struck a town

2

plow truck and another vehicle in the process. A witness estimated that defendant was driving approximately 70 mph on a narrow two-lane highway. The officer looked for defendant at his residence, but no one was there, although the officer noticed house keys hanging from the outside lock. Approximately two hours later, defendant arrived at the courthouse as a passenger in his father's car and was approached by police. Defendant showed signs of intoxication. Under these circumstances, the court concluded that the officer had much more than "reasonable grounds" to request that defendant submit a breath sample for testing. It thus denied the motion to dismiss the test-refusal charge.

¶ 6. A jury trial followed. Various witnesses testified to the events on the day in question. The arresting officer also testified. He explained that on the day in question, he was on duty and received word of a motor vehicle crash. He learned that defendant had fled the scene. A description of defendant's car was broadcast over the police radio. The officer patrolled the area looking for defendant and ultimately found him at approximately 2:00 p.m. at the courthouse. At that time, the officer smelled a strong odor of intoxicants emanating from defendant and observed defendant's bloodshot watery eyes. The officer did not see any alcohol containers in defendant's father's car. Defendant was arrested for leaving the scene of an accident, suspicion of DUI, and other related charges. The officer explained that he suspected defendant of DUI because a witness had put defendant at the scene of an accident at approximately noon, and when he was finally located two hours later, defendant showed obvious signs of impairment.

¶ 7. The officer then described processing defendant for suspicion of DUI at the police barracks. He read the DUI processing form to defendant. He informed defendant of the potential consequences of refusing a breath test. He asked defendant if he would like to speak

with a lawyer before deciding to submit to a test. Defendant responded by asking if his attorney Mike Ledden was there. The officer said that Mr. Ledden was not there and asked defendant if he wanted to be put in contact with a public defender. Defendant said no. Defendant then refused to take an evidentiary breath test and the officer printed out a DUI refusal ticket.

¶ 8. When asked at trial how he knew that Mr. Ledden was not at the police barracks, the officer explained that it was unusual to have an attorney at the police barracks and it would have been known if one was present. He further explained that there were dispatchers at the front windows of the police barracks and it was the dispatchers' general practice to let an officer know if an attorney arrived.

¶ 9. On cross-examination, the officer indicated that he had decided to request a breath test based on defendant's apparent intoxicated state at the courthouse and not based on the fact that defendant had left the scene of the accident. The officer also noted that when he found defendant at the courthouse, defendant walked away from him, stating that he was going to speak with Mike Ledden, who was defendant's attorney for another case being heard at the courthouse that day. The officer stated that at that point, he could not just let defendant walk away and defendant was taken into custody. The officer reiterated that he had offered to contact an attorney for defendant during the DUI processing, and that aside from asking if Mike Ledden was at the police barracks, defendant did not ask to be put in contact with Mike Ledden or ask the officer to call Mike Ledden. Defendant did not put on any evidence.

¶ 10. At the close of the evidence, defendant moved for a judgment of acquittal. He argued that there was no direct evidence to show that he had consumed alcohol before the car accident, and noted that police did not locate him until an hour and fifty-five minutes after the accident was called in. Defendant pointed to the officer's trial testimony that, in deciding to

4

request the breath sample, the officer had not factored in defendant's decision to leave the scene of the accident. Defendant maintained that the officer knew only that he had been driving at 12:05 p.m., and that by 2:00 p.m., he had consumed alcohol.

¶ 11. The court denied the motion. It explained that even if it looked at the definition of probable cause, which it believed would be required when defendant was arrested, that did not require a "more likely than not" standard as articulated by this Court. The court recognized the possibility, as developed by defendant, that defendant consumed all of his alcohol after the accident occurred. It reasoned, however, that neither the State nor the officer needed to exclude that possibility in determining reasonable grounds because probable cause did not require the situation to be more likely than not. The court concluded that there were reasonable grounds to request the test, and the State clearly met the remaining elements of the crime as well. The court thus denied defendant's motion for judgment of acquittal. The jury found defendant guilty, and this appeal followed.

¶ 12. Defendant first argues that the State failed to prove that the officer had reasonable grounds to believe that he was operating under the influence. Defendant maintains that there was no evidence as to when he consumed alcohol or that his consumption of alcohol impaired his driving. He argues that given the delay between the accident and his arrest, no reasonable juror could conclude that the officer had reasonable grounds to request a breath test.

¶ 13. Defendant also asserts that the State failed to meet a different element of the crime—that the officer's request for a breath sample was "reasonable"—given the lapse of time between the accident and the request and because the officer "interfered" with his right to consult with an attorney prior to requesting an evidentiary test. These arguments are raised for the first time on appeal and as defendant neither argues nor shows any plain error, we do not address

5

them.  See State v. Emmi, 160 Vt. 377, 380, 628 A.2d 939, 941 (1993) (argument not raised in trial court will not be considered for first time on appeal, absent plain error).[*]

¶ 14.    The officer testified that when he first encountered defendant near the courthouse and began to question him, defendant walked away saying that he was going to go talk with his lawyer, Mike Ledden.  The officer knew that Mike Ledden, a public defender, was defendant's lawyer in another matter.  At that point, the officer arrested defendant, and defendant was transported to the police barracks for processing.  During the ensuing DUI processing, the officer asked the defendant whether he wanted to speak with a lawyer, and defendant responded with a question: "Is Mike Ledden here?"  Assuming that he would know if there was a lawyer at the barracks, the officer responded, "No."  In his testimony, the officer acknowledged that he made no attempt to contact attorney Ledden for defendant, even though his ordinary practice would be to contact a specific attorney if so requested by an individual in defendant's situation.  The officer asserted that "at no point did [defendant] ask to be put in contact with" Mike Ledden.

---

[*] We note, however, that the record shows that defendant was afforded his statutory right to consult with an attorney prior to deciding whether to give a breath sample.  The law provides an individual with a limited statutory right to consult with an attorney before deciding whether to submit to an evidentiary test.  23 V.S.A. § 1202(c) (further explaining that person must decide whether to take test within reasonable time and no later than thirty minutes from time of initial attempt to contact attorney, and person must make decision at expiration of thirty minutes regardless of whether consultation took place).  By statute, a defendant must be informed of this right at the time the test is requested.  Id. § 1202(d)(4).  The right to refuse to take a test is purely statutory.  State v. Brean, 136 Vt. 147, 151-52, 385 A.2d 1085, 1088 (1978).

Beyond the limited statutory right to consult with an attorney prior to taking an evidentiary test, which is afforded a defendant "at the time a test is requested," defendant identifies no legal basis for his "right to consult with an attorney" claim.  He identifies no legal source for his "right" to walk away from police and avoid being arrested for suspicion of DUI, among other crimes, until he could find and consult with an attorney.  To the extent defendant is suggesting that the officer somehow illegally obtained his "refusal evidence," defendant filed no motion to suppress any evidence, and therefore, any such claim is waived.  See V.R.Cr.P. 12(b), (f) (providing that any motion to suppress evidence on ground that it was illegally obtained must be raised prior to trial, and failure to do so constitutes waiver).

¶ 15. In the aftermath of defendant's effort to physically go speak with his lawyer, and immediately following defendant's question about whether his lawyer was there at the barracks in response to the officer asking him if he wanted to talk to a lawyer, the officer's suggestion that defendant did not indicate that he wanted to talk to his lawyer is a strained interpretation of the events. Nonetheless, we conclude that the circumstances do not support a plain error argument in this case because after this exchange, and before seeking to administer the evidentiary test, the officer asked defendant if he would like to speak with a public defender, and defendant declined. See State v. Reynolds, 2014 VT 16, ¶ 33, 196 Vt. 113, 95 A.3d 973 (plain error requires "a showing that the error strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice" (quotation omitted)).

¶ 16. Defendant is challenging the court's denial of his motion for judgment of acquittal. In analyzing his arguments, we apply our well-established standard of review and consider if "the evidence, when viewed in the light most favorable to the State and excluding any modifying evidence, fairly and reasonably tends to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." State v. Turner, 2003 VT 73, ¶ 7, 175 Vt. 595, 830 A.2d 122 (mem.) (quotation omitted). "A judgment of acquittal is proper only if the State has failed to put forth any evidence to substantiate a jury verdict." Id. The State presented sufficient evidence to support the jury's verdict here.

¶ 17. Defendant was convicted of violating 23 V.S.A. § 1201(b), which provides:

> A person who has previously been convicted of a violation of this section shall not operate, attempt to operate, or be in actual physical control of any vehicle on a highway and refuse a law enforcement officer's reasonable request under the circumstances for an evidentiary test where the officer had reasonable grounds to believe the person was [operating under the influence of drugs or alcohol].

7

See also id. § 1202(a)(1), (3) (stating that every person who operates vehicle in Vermont is deemed to have given consent to evidentiary test of that person's breath for purpose of determining person's alcohol concentration or presence of other drug in blood, and evidentiary test is required when law enforcement officer has reasonable grounds to believe that person was operating vehicle under influence of drugs or alcohol).

¶ 18.    We agree with defendant that the term "reasonable grounds" is akin to probable cause.    See State v. Comstock, 145 Vt. 503, 506, 494 A.2d 135, 137 (1985) (stating in an analogous context that "[t]he purpose of the 'reasonable grounds' language . . . is simply to require that a certain amount of evidence exist before an officer may take a breath test"); Shaw v. Vt. Dist. Ct., 152 Vt. 1, 5, 563 A.2d 636, 639 (1989) (recognizing that determination of whether officer has "reasonable grounds to believe that" individual was DUI is similar to probable cause determination made to obtain search or arrest warrant); State v. Dist. Ct., 129 Vt. 212, 215, 274 A. 685, 686 (1971) (stating that, like probable cause hearing, determination of whether office had reasonable grounds to believe that individual was DUI "seek[s] a parallel sort of protection for operators against an arbitrary exercise of this police power"); see also Ayler v. Dir. of Revenue, 439 S.W.3d 250, 254 (Mo. Ct. App. 2014) ("Reasonable grounds in a refusal case is virtually synonymous with probable cause." (quotation omitted)).    But see Motor Vehicle Admin. v. Spies, 82 A.3d 179, 181 n.1, 185 (Md. 2013) (under Maryland law, police may stop or detain a person and request a breath test when officer "has reasonable grounds to believe [that person] is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol," and term "reasonable grounds" means "reasonable articulable suspicion and not preponderance of the evidence or probable cause" (quotations omitted)).

¶ 19.    "Probable cause . . . exists when the facts and circumstances known to an officer are sufficient to lead a reasonable person to believe that a crime was committed and that the suspect committed it." State v. Arrington, 2010 VT 87, ¶ 11, 188 Vt. 460, 8 A.3d 483 (quotation omitted).    This "is not a high bar: It requires only the kind of fair probability on which reasonable and prudent people, not legal technicians, act." Kaley v. United States, 134 S. Ct. 1090, 1103 (2014) (quotations and alterations omitted); see also Illinois v. Gates, 462 U.S. 213, 235 (1983) ("Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision."); United States v. Juwa, 508 F.3d 694, 701 (2d Cir. 2007) (recognizing that "probable cause is a lower standard than preponderance of the evidence; it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity" (quotation omitted)); State v. Towne, 158 Vt. 607, 614-16, 615 A.2d 484, 487-89 (1992) (rejecting notion that "probable cause" means "more likely than not," and construing term in common sense manner to mean reasonably probable).

¶ 20.    In evaluating probable cause, we consider "the totality of the circumstances" assessed in a "practical . . . common sense manner." State v. Weisler, 2011 VT 96, ¶ 42, 190 Vt. 344, 35 A.3d 970 (quotation omitted); see also Florida v. Harris, 133 S. Ct. 1959, 1055-56 (2013) (in evaluating probable cause, Supreme Court has "rejected rigid rules, bright-line tests, and mechanistic inquiries in favor of a more flexible, all-things-considered approach," and Court has consistently looked to "totality of the circumstances" in evaluating whether State has met "this practical and common-sensical standard"). We emphasize that "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause." Gates, 462 U.S. at 243 n.13.

¶ 21. The Missouri Court of Appeals articulated a similar standard in evaluating "reasonable grounds" for purposes of a DUI stop. As that court stated:

> Probable cause to arrest exists when the arresting officer's knowledge of the particular facts and circumstances is sufficient to warrant a prudent person's belief that a suspect has committed an offense. In determining whether there were reasonable grounds to arrest a driver for DWI, the trial court must evaluate the situation from the viewpoint of a cautious, trained, and prudent police officer at the time of the arrest. There is no precise test for determining whether probable cause exists; rather, that determination is based on the particular facts and circumstances of each individual case. At issue in a refusal case is whether the officer had reasonable grounds to believe the driver was intoxicated, not whether the driver actually was intoxicated. The level of proof necessary to establish probable cause is substantially less than that required to prove guilt beyond a reasonable doubt.

Ayler, 439 S.W.3d at 254 (citations omitted).

¶ 22. The jury instructions in this case were consistent with the discussion above. Thus, the trial judge instructed the jury that:

> Reasonable grounds means that the officer had to make specific observations or information had been reported to him which reasonably supported an inference that [defendant] had been operating a motor vehicle while he was under the influence of intoxicating liquor.
>
> . . . .
>
> A person is under the influence of intoxicating liquor if his sole mental or physical abilities are diminished or affected in the slightest degree by intoxicating liquor.
>
> An influence of intoxicating liquor may be proven by evidence of observable behavior indicating that [defendant] had consumed alcohol and ceased to retain full control even to the slightest degree over the faculties of mind or body.

> The State need not prove that [defendant] was actually under the influence. It must prove that the officer had reasonable grounds to believe that he was.
>
> The fact of the refusal is not to be considered as evidence that the officer had reasonable grounds to request the evidentiary test. Relevant observations may include his manner of driving or walking, his speech, the condition of his eyes, the odor of his breath, and any other physical appearance or conduct which could reasonably tend to prove his condition.

¶ 23. There was sufficient evidence here to allow the jury to conclude that the officer had "reasonable grounds to believe" that defendant had been driving under the influence of alcohol. As set forth above, the law enforcement officer learned that defendant had been involved in a car accident around noon—on a day when the roads were clear—and that defendant had fled the scene. The officer searched for defendant and finally located him slightly less than two hours later in his father's car. At that time, defendant showed obvious signs of intoxication. The officer did not observe any alcohol containers in defendant's father's car. It was not unreasonable under these circumstances for the officer to conclude that there was a reasonable probability that defendant had been intoxicated at the time of the accident. We note that the law provides a permissive inference that a person was under the influence of intoxicating liquor in violation of 23 V.S.A. § 1201(a)(2) or (3) if the person's alcohol concentration at any time within two hours of the alleged offense was 0.10 or more. 23 V.S.A. § 1204(a)(3). The officer knew the time of the accident here, which was less than two hours before defendant's arrest, and a "temporal connection" between the operation and the indicia of intoxication was established.

¶ 24. The fact that defendant left the scene of the accident is part of the totality of the circumstances and, as the test for probable cause is an objective one, the officer's subjective analysis is irrelevant. See State v. Guzman, 2008 VT 116, ¶ 16, 184 Vt. 518, 965 A.2d 544

("Probable cause depends on whether there are objective facts to support such a finding, not whether the officers subjectively believed there was probable cause."); State v. Chicoine, 2007 VT 43, ¶ 8, 181 Vt. 632, 928 A.2d 484 (mem.) (stating that standard for finding probable cause for warrantless arrest is whether "facts and circumstances known to an officer are sufficient to lead a reasonable person to believe that a crime was committed and that the suspect committed it" (emphasis added)). We note that the officer testified that he considered the fact that defendant had left the scene of the accident. It is obvious that he did so because this was the only time defendant was known to have operated a motor vehicle. The officer's explanation on cross-examination was more about the indicia of intoxication that he observed at the courthouse, which led him to believe that defendant was DUI. In other words, the officer did not assume that defendant was drunk simply because he left the scene of the accident; rather, he saw obvious signs that defendant was intoxicated at the courthouse and that led the officer to believe that defendant had been driving while intoxicated.

¶ 25. As the trial court observed, moreover, the officer did not have to rule out the possibility of post-operation drinking in order to have probable cause. We note that there was no evidence of post-operation consumption in this case. Defendant did not tell the officer that he had been drinking after the accident, and the officer did not observe any alcohol containers in defendant's father's car, the car that defendant had traveled in to the courthouse. Defendant did not present any evidence about post-operation consumption at trial. In any event, as the trial court stated, the officer did not need to exclude all hypothetical possibilities in order to have reasonable grounds to believe that defendant had been operating under the influence.

¶ 26. Defendant cites State v. Ollison, 236 S.W.3d 66 (Mo. Ct. App. 2007), as support for his assertion that the officer could not have had reasonable grounds to believe that he was

driving under the influence. We find this case unpersuasive. First, Ollison was not a criminal-refusal case. The defendant there was charged with driving under the influence, and thus, the State needed to prove beyond a reasonable doubt that the defendant operated a motor vehicle and was intoxicated while doing so. As indicated above, the State here needed show only that the officer had reasonable grounds to believe that defendant was driving under the influence. It did not need to prove that defendant was in fact driving under the influence.

¶ 27. The facts in Ollison are distinguishable as well. The defendant there was in a car accident and was subsequently located at his in-laws' home around 2:00 a.m. After failing a series of roadside sobriety tests and blowing a .154% on a portable breath test, the defendant was transported to the sheriff's office where he blew a .168% on the DataMaster machine at 3:09 a.m., and was arrested for driving while intoxicated. The State in that case did not establish when the car accident occurred—its evidence showed only that the accident had occurred sometime between 7:00 p.m. and 1:20 a.m., a period in excess of six hours. In the instant case, the arresting officer testified that he knew that defendant had been involved an accident less than two hours before he encountered defendant, and he observed obvious signs of intoxication during his encounter with defendant. It was for the jury to weigh the evidence presented, and the jury in this case had sufficient evidence upon which to find defendant guilty.

Affirmed.

FOR THE COURT:

_____
Associate Justice

13