NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 134

No. 2015-366

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Tristan Cameron | September Term, 2016 |

Alison S. Arms, J.

James A. Hughes, Franklin County State's Attorney, St. Albans, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, and Sara Puls, Appellate Defender, Montpelier, for
   Defendant-Appellant.


PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.


¶ 1.    **DOOLEY, J.**   Defendant appeals his conviction under 23 V.S.A. § 1091(b) for grossly negligent operation of a motor vehicle resulting in the death of a passenger. He argues on appeal that there was not enough evidence to convict him, that testimony regarding his marijuana use should have been excluded, that prejudicial juror discussions occurred, and that the trial court's instruction to the jury lowered the standard of proof required for conviction. Because we find that the State presented enough evidence to create a question for the jury, we affirm on the first issue. But because, absent expert testimony, the jury was left to speculate that the State's evidence provided the necessary link between defendant's marijuana use and the grossly negligent operation charge, we reverse and remand for a new trial on the second issue.

¶ 2. At around two in the afternoon on July 18, 2013, the then seventeen-year-old defendant and a passenger were driving defendant's new car north along Duffy Hill Road. The freshly-graveled dirt road sloped downhill, curved, went back uphill, and then turned to the right around a blind corner at the intersection with Burns Hill Road. The road was bordered by vegetation and rocks, and a ditch stretched along the northbound lane. As defendant drove north, three three-axle farm trucks were travelling south, driving at approximately twenty-five miles per hour. Defendant and the driver of the first truck saw each other as they came around the blind corner from opposite directions. The driver of the first farm truck steered to the right and stopped without incident just off the southbound side of the road. Defendant steered onto the northbound edge of the road, tried to veer away, overcorrected, and lost control of his car. The tail end of defendant's car slid to the left and then back toward the right, turning the car so that the passenger side faced the oncoming trucks. The front passenger door of defendant's car hit the second farm truck on the front driver's side corner as the truck's driver tried to stop. Defendant's passenger was injured in the crash and died the next day as a result of his injuries. Defendant sustained several lacerations, including a deep cut on his head, but was otherwise unharmed.

¶ 3. On December 21, 2013, defendant was charged with grossly negligent operation of a motor vehicle, death resulting, under 23 V.S.A. § 1091(b). A jury convicted defendant after a three-day trial. This appeal followed, raising the issues we noted above. We start with the claim of evidence insufficiency because, if we agree with defendant's position, the result will be to dismiss the case.

¶ 4. Defendant argues that the State did not present sufficient evidence to prove him guilty of grossly negligent operation. He moved for a judgment of acquittal at the end of the State's case and renewed it at the close of evidence; he asks us to reverse the trial court's denial of that motion. We instead affirm and hold that the State presented sufficient evidence to create a legitimate question for jury deliberation.

2

¶ 5.     We apply the same standard as the trial court when reviewing a motion for a judgment of acquittal: "[W]e view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. O'Dell, 2007 VT 34, ¶ 4, 181 Vt. 475, 924 A.2d 87.  This is a highly deferential standard, which recognizes that neither trial nor appellate courts can place themselves in the jury's position. State v. Neisner, 2010 VT 112, ¶ 18, 189 Vt. 160, 16 A.3d 597.  A jury is in the best position to weigh facts and deliver a verdict, particularly in close fact-dependent cases. State v. Carlin, 2010 VT 79, ¶ 10, 188 Vt. 602, 9 A.3d 312 (mem.).  Thus, courts should grant a judgment of acquittal only when there is no evidence to support a guilty verdict. State v. Couture, 169 Vt. 222, 226, 734 A.2d 524, 527 (1999).

¶ 6.     23 V.S.A. § 1091(b)(2) defines gross negligence as "a gross deviation from the care that a reasonable person would have exercised in that situation." Negligence and gross negligence are distinguished only by degree: negligence is a failure to "exercise ordinary care," gross negligence is "a failure to exercise even a slight degree of care." Id. § 1091(a)(2); Neisner, 2010 VT 112, ¶ 23.  Determining whether gross negligence has occurred is a fact-dependent inquiry, and though prior cases may be instructive, each new case turns on its own facts. Langdon-Davies v. Stalbird, 122 Vt. 56, 57, 163 A.2d 873, 874-75 (1960).

¶ 7.     Our cases make clear that a conviction for grossly negligent operation cannot rest solely on "a mere error in judgment, loss of presence of mind, or momentary inattention." State v. Free, 170 Vt. 605, 607, 749 A.2d 622, 625 (2000) (mem.).  But our cases make equally clear that a jury may convict for grossly negligent operation when momentary inattention co-occurs with an elevated risk of danger.  For example, in State v. Carlin we held that a charge for grossly negligent operation under § 1091(b) could proceed because, although the defendant only briefly looked away from the road, she looked down at her GPS device while approaching a clearly visible bicyclist who she then hit with her car when she drove onto the road's shoulder. 2010 VT 79, ¶ 9.

3

And in State v. Koch we upheld a grossly negligent operation conviction where the defendant's car hit a pedestrian standing on the side of the road and the defendant had an unobstructed view of the pedestrian for nearly 400 yards. 171 Vt. 515, 516-17, 760 A.2d 505, 506-07 (2000) (mem.). The underlying principle is that "a driver's duty to watch the road is related to the circumstances that confront him and the place and manner of operation." Free, 170 Vt. at 608, 749 A.2d at 626 (Dooley, J., dissenting).

¶ 8.    In this case, the State's evidence was more than sufficient to create a question for the jury. It is undisputed that the accident occurred on a blind curve. The driver of the second truck testified to seeing defendant's car slide around the blind corner, just miss hitting the first truck, then veer to the right and go onto the grass off the edge of the road. He observed that defendant's car then swung around so that the passenger side faced oncoming traffic. He testified that it looked like defendant's car was traveling at a speed of "probably mid-nineties, maybe high nineties," and that defendant looked like he had fallen asleep or passed out because as he came around the corner he was leaning forward with his head tilted to the side. The driver of the first truck testified that defendant came around the corner "going fairly good speed," turned his steering wheel to avoid the first truck, and went sideways into the second truck when he tried to pull out of his swerve. He also testified that defendant "jumped" out of his car and the "first words out of his mouth [were] 'I can't believe I fell asleep.' " The state trooper investigating the crash testified that defendant told him he was traveling between forty and fifty miles per hour as he came into the blind corner. The trooper described defendant as "a little dazed and confused" and told the jury that at the scene defendant did not recall what had happened but just remembered coming to after his car hit the farm truck. Finally, the State's expert witness described the trajectory of defendant's car, detailing how marks on the road indicated defendant lost control coming around the corner and that the car's tail end started to slide out into the middle of the road and then swung back

4

toward the right side of the road until it spun around and exposed the passenger side of the car to oncoming traffic.

¶ 9. Defendant argues that the State's evidence was insufficient to show grossly negligent operation. Specifically, he argues that "[t]here was no evidence from the State that Tristan lost control because he was driving too fast and no evidence he was in the wrong lane," emphasizing that he was operating within the applicable speed limit. We conclude that a jury could reasonably find that the blind corner at the intersection of Duffy Hill Road and Burns Road presented an elevated risk of danger such that drivers should operate with extra caution. The State presented evidence that defendant was driving in such a way that he could not control his car as he came around the corner. In these circumstances, a jury could conclude that defendant was grossly negligent. See Carlin, 2010 VT 79, ¶ 9 ("Although a driver's momentary inattention, by itself, is insufficient to warrant a finding of gross negligence, if that inattention occurs in a place where there is great potential for immediate danger, it may be enough to allow a jury to find gross negligence.").

¶ 10. With respect to defendant's specific arguments, there was ample evidence that the accident occurred while defendant was in the wrong lane. Whether defendant was operating within the speed limit is not dispositive. Under 23 V.S.A. § 1081(a), defendant was required to operate at a speed that was "reasonable and prudent under the circumstances, having regard for the actual and potential hazards then existing" and in a manner to avoid collision with other vehicles on the roadway. Even if within the speed limit, the jury could conclude that defendant's speed did not comply with § 1081(a) and caused the accident, which was the result of gross negligence. Therefore, we affirm the trial court's denial of defendant's motion for a judgment of acquittal.[1]

---

[1] Our conclusion that the evidence was sufficient does not rely on the marijuana usage evidence and would be the same if the marijuana usage evidence had never been admitted.

¶ 11. Having determined that there was sufficient evidence for the case to go to the jury on the charge against defendant, we turn to the evidentiary issues. The State offered evidence, through the testimony of a state trooper who was the investigating police officer, that defendant used marijuana during the morning before the accident, and the court admitted it over defendant's objection. Defendant argues that the admission decision was erroneous for multiple reasons.

¶ 12. Defendant admitted to the marijuana usage in an interview with a state trooper. Most of defendant's reasons relate to that interview; defendant argues on appeal that the results of the interview should have been suppressed for three reasons: (1) the trooper failed to give defendant Miranda warnings before the interview; (2) because defendant was a minor at the time of the interview, he could not be interviewed without the presence of a parent; and (3) defendant's confession to the crime of possession of marijuana was involuntary. We hold that the record is inadequate to address these issues because defendant failed to preserve them and make an adequate record.

¶ 13. The facts and proceedings related to these claims are as follows. The trooper who elicited the admission had spoken with defendant three times: at the scene of the accident; at the police station on the evening after the accident; and again at the police station on July 24, 2013. During their conversation in July, the trooper confronted defendant with a statement from a separate individual that defendant, defendant's passenger, and the individual giving the statement had smoked marijuana together on the morning of the collision. Defendant told the trooper that this statement was true.

¶ 14. Defense counsel did not make a motion to suppress defendant's statement with respect to marijuana usage. Instead, defense counsel objected at trial to the admission of the statement, telling the court, "I think it's, well it's my position it's a routine evidentiary objection," adding "it's not a fourth or fifth amendment issue." The trial court treated this statement as an objection under Vermont Rules of Evidence 401 and 403. After reminding defense counsel that a

6

motion to exclude should have been brought before trial, the court held an evidentiary hearing on the admissibility of defendant's statement. Questioning by defense counsel and the State established that defendant's father was at the police station, but not in the same room, while defendant spoke with the trooper on July 24, 2013. Defense counsel asked the trooper if he had told defendant's father he would prefer to talk with defendant alone. The trooper replied that he had not expressed a preference either way. The trooper also reported that defendant was forthcoming during their conversation. Neither defense counsel nor the State asked whether the trooper gave defendant <u>Miranda</u> warnings or whether defendant was told he was free to leave without speaking with the trooper. To the extent the court addressed the issues defendant has raised on appeal with respect to his constitutional rights, the court concluded that nothing suggested defendant's statement was involuntary and, because defendant was not under arrest at the time of his statement, he was not in custody. The court ruled sua sponte that defendant's statement could not be excluded on constitutional grounds because defendant was not in custody, was accompanied by an interested adult, and gave a voluntary statement.

¶ 15. Defendant has claimed on appeal that the trooper failed to provide necessary <u>Miranda</u> warnings and to provide the opportunity to consult with an adult, and that defendant's confession to using marijuana before the accident was involuntary. Based on these claims, he has argued here that the evidence of the marijuana usage should have been suppressed as if trial counsel moved to suppress and made these constitutional arguments. In fact, trial counsel explicitly stated he was not making a constitutional claim to exclude the evidence. Apparently, trial counsel was aware that Vermont Rule of Criminal Procedure 12(b)(3) requires that a motion to suppress be made before trial and that failure to make a timely motion under Rule 12(b)(3) constitutes a waiver of the suppression issues. V.R.Cr.P. 12(f). As a result, trial counsel never made a motion to suppress and argued explicitly that he was not seeking to suppress the evidence. Although the trial court took further testimony from the witness, related to whether defendant's statement to the

7

witness on his marijuana use was admissible, the State reasonably understood that the testimony applied to defendant's motion to exclude the statement under the evidence rules. The additional testimony was brief, and failed to provide an adequate record on the claims defendant now makes on appeal.

¶ 16. The appeal arguments are raised for the first time here and should have been raised in a motion to suppress. Because "defendant filed no motion to suppress . . . , any such claim is waived." State v. Perley, 2015 VT 102, ¶ 13 n.*, 200 Vt. 84, 129 A.3d 93; see V.R.Cr.P. 12(b)(3), (f) (providing that any motion to suppress evidence on ground that it was illegally obtained must be raised prior to trial, and failure to do so constitutes waiver). Further, by not raising the issues at all below, defendant has not preserved them for appellate review. See State v. Bogert, 2013 VT 13A, ¶ 29, 197 Vt. 610, 109 A.3d 883. As Bogert explains, the consequence of a failure to raise an issue below is that there is an inadequate record from the trial court to address the issue on appeal. That is exactly the situation here.[2] The inadequacy of the record similarly precludes plain error review.

¶ 17. Defendant's other ground for his position that the evidence of marijuana usage should have been excluded is based on the Vermont Rules of Evidence. As noted above, defendant's initial objection took a general form. Rather than naming a specific rule prohibiting admission, trial counsel said, "I think it's, well it's my position it's a routine evidentiary objection,"

---

[2] For example, defendant's claims that defendant should have had Miranda warnings and had the opportunity to consult his parents during interrogation both presume he was in custody at that time. See In re E.W., 2015 VT 7, ¶ 10, 198 Vt. 311, 114 A.3d 112; State v. Piper, 143 Vt. 468, 473, 468 A.2d 554, 557 (1983). There are few facts in evidence showing the substance of the interview or how it was conducted as bearing on whether defendant was in custody. We have held that the most important fact bearing on custody is whether the interviewee was told that he or she was free to terminate the interview and leave. State v. Sullivan, 2013 VT 71, ¶ 29, 194 Vt. 361, 80 A.3d 67. In this case, we have no evidence on which we can determine whether such a statement was made because no one asked the trooper whether he made that statement. Similarly, we have no evidence of whether the trooper gave Miranda warnings.

and at one point referred to the statement as prejudicial and at another stated that it was not relevant because there was no other evidence that defendant was impaired.

¶ 18. The trial court interpreted this objection as a general relevancy objection and specifically addressed admission under Evidence Rules 401 and 403. The court found that the statement was relevant because it "tend[ed] to make more probable the fact that the defendant had ingested marijuana prior to the collision" and could aid the jury in assessing the weight of other evidence in the case and defendant's testimony should he choose to testify. The court also ruled that there was a direct connection between evidence of defendant's marijuana use and the cause of the accident, and that evidence of defendant's marijuana use was not so prejudicial as to substantially outweigh its probative value. The trial court highlighted the State's evidence that could show that defendant was under the influence at the time of the accident, such as testimony from two witnesses suggesting defendant may have fallen asleep while driving. Defendant has clarified his argument to some degree on appeal; he now argues that the evidence of marijuana usage had little probative value because the State presented no other evidence to suggest impairment, and particularly no expert testimony, and was highly prejudicial because it was not connected with any other proposition in the case.

¶ 19. We review a trial court's evidentiary rulings for abuse of discretion. State v. Groce, 2014 VT 122, ¶ 13, 198 Vt. 74, 111 A.3d 1273. We will reverse a court's broad discretion to admit or exclude evidence only where that discretion was withheld or exercised unreasonably. State v. Porter, 2014 VT 89, ¶ 26, 197 Vt. 330, 103 A.3d 916.

¶ 20. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 402 specifies that only relevant evidence is admissible. And Rule 403 grants a trial court discretion to exclude otherwise admissible relevant evidence if its "probative value is substantially outweighed by the danger of

9

unfair prejudice, confusion of the issues, or misleading the jury." Two other evidentiary rules are also implicated by defendant's motion. Rule 104 provides that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court" except that "[w]hen the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." V.R.E. 104(a), (b). In essence, defendant is arguing that the Rule 401 and 403 requirements are met only if the State establishes a relationship—that is, fulfills a condition of fact—between the marijuana evidence usage testimony and whether defendant operated in a grossly negligent manner under 23 V.S.A. § 1091(b).

¶ 21. The second rule implicated is Rule 702, which authorizes expert testimony subject to certain standards: "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." While we are not dealing here with a question of whether expert testimony is admissible, the authorization of Rule 702 suggests the kind of foundation testimony that is required to meet the condition of admissibility found in Rule 104(b). In instances when the jury needs scientific, technical, or specialized knowledge to make the decision the law entrusts to it, we have often held that evidence that provides such knowledge is required. Thus, in Burton v. Holden & Martin Lumber Co. we held that:

> There are many cases where the facts proved are such that any layman of average intelligence would know, from his own knowledge and experience, that the injuries were the cause of death. In such a case the requirements of law are met without expert testimony. But where, as here, the physical processes terminating in death are obscure and abstruse, and concerning which a layman can have no well-founded knowledge and can do no more than indulge in mere speculation, there is no proper foundation for a finding by the trier without expert medical testimony.

112 Vt. 17, 19, 20 A.2d 99, 100 (1941) (citation omitted). Though Burton focused on medical testimony, the principle it espouses is broadly applicable and relevant here.

10

¶ 22.    The interaction of these concepts is controlled in this case by State v. Rifkin, 140 Vt. 472, 438 A.2d 1122 (1981).  In Rifkin, the defendant was charged with operating a motor vehicle while under the influence of drugs after he drove off an icy road and into a snowbank.  The crime, as it was then defined in 23 V.S.A. § 1201(a)(3), required the State to prove that the drug consumption rendered defendant "incapable of driving safely."  Id. at 475, 476, 438 A.2d at 1124.  At the scene of the accident, the defendant told a police officer that he had smoked marijuana thirty minutes earlier.  He was also taking a prescription medicine designed to control his alcohol consumption, which could cause some of the behaviors defendant exhibited at the scene.  After his conviction, the defendant appealed, arguing that there was insufficient evidence to support his conviction because the State did not present expert testimony to link his behavior at the scene to marijuana use or to prove that the amount of marijuana he used would render him unable to drive safely.  Id. at 476, 438 A.2d at 1124.  We agreed and explained that when a defendant is alleged to have operated a motor vehicle under the influence of alcohol, the average juror, "on the basis of his personal observations, is competent to give his opinion as to the sobriety of an individual because it takes no special scientific knowledge or training to recognize intoxication."  Id. (citation omitted).  But the same is not true for other drugs, which can produce a variety of symptoms that "cannot be sorted out without specialized training."  Id.  We held that an expert witness was required both to draw the line between a defendant's behavior and drug use, and to establish that a defendant was under the influence to such a degree that he was unable to drive safely.  Id. at 476-77, 438 A.2d at 1124-25; see also People v. Gosse, 457 N.E.2d 129, 132 (Ill. 1983) (holding evidence of alcohol and drug use cannot be admitted to support charge of reckless conduct without other evidence tying use to inference of intoxication).

¶ 23.    We recognize that Rifkin was a case of evidence sufficiency and this is a case of evidence admissibility, but conclude that this is a distinction without a difference.  In Rifkin, a police officer testified that the symptoms the defendant displayed related to the marijuana usage,

but the officer testified as a lay witness and was not qualified as an expert witness. We held that "the connection between the symptoms observed and the influence of a drug must then be made by a qualified expert." Id. at 477, 438 A.2d at 1125. We further held that the defendant's conviction had to be reversed because there was no other evidence that could meet the requirement. In essence, Rifkin held that the extent to which the lay witness evidence was admissible depended in turn on the introduction of expert testimony relating the use of marijuana to the defendant's ability to drive safely. In the absence of the expert testimony, the evidence was inadmissible because the condition was not met. Rifkin was a case about both evidence admissibility and evidence sufficiency.

¶ 24. We also acknowledge that a later case, State v. Devine, 168 Vt. 566, 719 A.2d 861 (1998) (mem.), is factually similar to both Rifkin and this case but reaches a different result from Rifkin. Devine does not cite Rifkin or address the inconsistency in result. In Devine, the defendant was convicted of careless and negligent operation of a motor vehicle with death resulting under 23 V.S.A. § 1091(d)[3] after he drove his car across the center lane of state Route 7 and crashed into a car in the opposite lane, killing the driver of the other car. The evidence at trial was that "[a]lthough the road was dry and it was a clear day with good visibility, [the] defendant drove in excess of the speed limit across the double yellow line and two lanes of oncoming traffic, and straight into the victim's car—all without attempting to slow down or to turn out of the way." Id. at 567, 719 A.2d at 863. The evidence showed that after the accident the defendant was unaware that he had struck another vehicle. It also showed that he had little opportunity for sleep for several days prior to the accident, consumed alcohol and marijuana during this period and had trouble staying awake. Id.

---

[3] As the Court noted in Devine, the statute was rewritten in 1996 to repeal this subsection and the elements of the crime contained in it. Devine, 168 Vt. at 566, n.*, 719 A.2d at 863, n.*. The statute required proof of criminal negligence. See State v. Beayon, 158 Vt. 133, 136, 605 A.2d 527, 528 (1992).

¶ 25. At trial, the court admitted into evidence two bags of marijuana concealed in defendant's underwear and a marijuana pipe found in his car over the defendant's objection that this evidence was more prejudicial than probative under Rule 403. He did not raise the argument, either at trial or in the subsequent appeal, that the marijuana usage evidence could be admitted only if the State laid a foundation for such evidence through expert testimony that demonstrated the relationship between marijuana usage and careless and negligent operation of a motor vehicle. We upheld the admission even though there was no evidence the defendant consumed marijuana right before the accident because he admitted to consuming marijuana in the days before the accident, he attempted to hide the marijuana pipe, and he refused to submit to a blood test.

¶ 26. In view of the limited nature of the objection and issue in Devine, we cannot view its holding as inconsistent with that in Rifkin even though its result appears inconsistent.[4] To the extent they are inconsistent, we overrule Devine and reaffirm the holding in Rifkin. Cf. State v. Bolaski, 2014 VT 36, ¶ 46, 196 Vt. 277, 95 A.3d 460 (overruling memorandum decision under similar circumstances).

¶ 27. Defendant in this case challenged the admission of the marijuana evidence arguing both that it was irrelevant and that its probative value was outweighed by its prejudicial effect. See V.R.E. 403. This was a proper way to challenge the lack of a foundation for the evidence. See State v. Martin, 2007 VT 96, ¶¶ 27-30, 182 Vt. 377, 944 A.2d 867; State v. Griswold, 172 Vt. 443, 448, 782 A.2d 1144, 1148 (2001). Although the statement of grounds for the objection was general, the court understood that it raised the probative value of the evidence in a case where there

---

[4] We also conclude that the result in Devine would be reached, in any event, under the doctrine of harmless error. Because of sleep deprivation, the defendant had difficulty staying awake, and the circumstances of the accident indicated that he fell asleep at the time of the accident. Driving under the influence of drugs or alcohol was not an element of the crime. The evidence that the defendant should not have operated his vehicle in his condition was very strong irrespective of the cause of that condition. While drug usage may have helped explain the source of that condition, it was evidence of context.

was no other evidence that defendant's operation was impaired by the presence of drugs in his system. The court held that the evidence had probative value because "it could aid in assessing the weight and credibility of defendant's testimony should defendant decide to testify," "aid the jury in considering the weight that they might afford other evidence in the case," and there was evidence "defendant may have fallen asleep or that he may have been in the wrong lane for some other reason." The court concluded that "[t]here is a direct connection between the evidence that defendant used marijuana prior to the collision and the cause of the accident" and that "[t]he jury will have the opportunity to weigh the evidence and determine whether it believes that the defendant's ingestion of marijuana caused his perceptions to be inaccurate or caused the collision that resulted in [the passenger's] death."

¶ 28. Under Rifkin, the evidence of marijuana usage had no probative value absent expert testimony relating the marijuana usage to whether defendant was grossly negligent in his operation of his vehicle at the time of the accident. There was no such testimony here, and the jury was left to speculate on exactly the issues the court held gave probative value to the marijuana consumption evidence. There is a significant likelihood that the jury was misled to the prejudice of defendant. Although the trial judge had substantial discretion in making the Rule 403 determination, the reason for allowing the introduction of the evidence fell outside that discretion and was error.

¶ 29. Although the State has not argued that any error was harmless, defendant has addressed the question, urging us to conclude that the error cannot be harmless. Error is harmless where, excluding the evidence that was improperly admitted, there remains "overwhelming evidence to support the conviction and the evidence in question did not in any way contribute to the conviction." Groce, 2014 VT 122, ¶ 19 (quotations omitted). We do not have to go into the evidence in any detail to hold that the standard of harmless error was not met. While we have held above that there was sufficient evidence for the case to go to the jury, the result of the trial turned in significant part on the jury's assessment of conflicting testimony of expert witnesses. Because

14

the jury had to speculate on the effect of the marijuana consumption on defendant's ability to operate safely, it may have found a close connection, given great weight to the evidence and concluded this evidence tipped the scale in favor of the State. Because marijuana consumption constitutes an independent crime, the jurors may have viewed defendant and his conduct in an unfavorable light beyond their impression from the other evidence. See State v. Forbes, 161 Vt. 327, 330, 640 A.2d 13, 15 (1993). This is not a case where we can conclude that the improper evidence could not have contributed to the verdict.

¶ 30. Having concluded that that there must be a retrial because of the admission of evidence of defendant's consumption of some marijuana, without expert testimony connecting that evidence to whether defendant drove in a grossly negligent manner causing the death of his passenger, we need address the remaining claims summarily, if at all.

¶ 31. Defendant next argues that the trial court should have granted his motion for a new trial because of presubmission intra-jury conversations about defense counsel and the evidence. We need not resolve this issue because it is not likely to reemerge in the retrial. We address it briefly because of the circumstances that led to the conversations among jurors.

¶ 32. In this case, the trial judge gave daily instructions to the jurors not to discuss the case with others, but did not give a general pretrial instruction on this subject and did not specifically address discussions about in-court activities and evidence among jurors. When it came to light that such discussions were occurring, the trial judge interviewed each of the jurors and found that many of the jurors did not understand that such discussions among jurors were prohibited. The court then gave a specific instruction on the subject. The court then concluded that because no juror had expressed an opinion on defendant's guilt or innocence, a new trial was not necessary.

¶ 33. Although we have not addressed specifically the propriety of presubmission discussion of evidence and other in-courtroom activity by jurors in criminal cases,[5] other jurisdictions are unanimous in prohibiting such discussion. See, e.g., People v. Flockhart, 2013 CO 42, ¶ 12, 304 P.3d 227; Ford v. State, 12-KA-01318-SCT (¶ 15), 147 So. 3d 325, 331 (Miss. 2014).[6] In this case, the court apparently intended to instruct the jurors not to discuss the evidence and in-court events with each other in a pretrial instruction but failed to do so.[7] It is not surprising that the jurors did not understand from the court's instructions at the end of each trial day that they were not supposed to have such discussions with other jurors during the following trial day and engaged in such discussions. We caution trial judges who are presiding over jury trials to give an explicit presubmission nondiscussion instruction, along with an instruction not to communicate with others about the case.[8]

---

[5] In State v. McCarthy, defendant claimed that jurors discussed the case during a view of the scene of the alleged crime. 2012 VT 34, 191 Vt. 498, 48 A.3d 616. Although we found that there was no evidence that the jurors talked with each other about the case, and affirmed on that basis, we did observe that "courts should carefully structure jury views, instructing jurors definitively and in advance that they should not talk to one another or engage in independent exploration of the view . . . ." Id. ¶ 26. In view of the disposition of the case, the opinion contains no analysis of whether jurors can engage in presubmission discussions of the evidence or of the consequences if they do.

[6] We have had numerous decisions on external influences on jurors in criminal cases, generally holding that "the jury must be free of the taint of extraneous influences." State v. Johnson, 2013 VT 116, ¶ 15, 195 Vt. 498, 90 A.3d 874. Some courts have authorized juror evidence discussions prior to the submission of the case to the jury in civil cases. See D. Anderson, Let Jurors Talk: Authorizing Pre-Deliberation Discussion of the Evidence During Trial, 174 Mil. L. Rev. 92 (2002) (discussing authorization for predeliberation discussion in civil cases in Arizona, Colorado, and District of Columbia).

[7] The court gave a specific instruction on discussion between jurors on March 6, 2015, indicating it was identical to the instruction given at the start of the case, but no such instruction was given at the start of the case.

[8] The instruction can be given in an orientation of potential jurors or in case-specific preliminary instructions. To the extent that the trial judge is giving reminder instructions during the trial, they should specifically address intra-jury communications.

¶ 34.   Defendant's final argument is that the trial court committed structural error requiring reversal when it defined "beyond a reasonable doubt" as convinced with "great certainty" rather than "utmost certainty," the standard which defendant reads In re Winship, 397 U.S. 358 (1970) to require.  Much of the argument is unpreserved, and we rejected it at least in part in State v. Levitt, 2016 VT 60, ¶ 2, __ Vt. __, 148 A.3d 204.  We decline to reach it here.

Reversed and remanded.

FOR THE COURT:

_____

Associate Justice