VERMONT SUPREME COURT
109 State Street
Montpelier VT 05609-0801
802-828-4774
www.vermontjudiciary.org

Case No.      24-AP-397



*Note: In the case title, an asterisk (\*) indicates an appellant and a double asterisk (\*\*) indicates a cross-appellant. Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

JUNE TERM,  2026

State of Vermont v. Jeremy Amidon*

}  APPEALED FROM:
}
}  Superior Court, Rutland Unit,
}  Criminal Division
}  CASE NO. 23-CR-01476
}  Trial Judge: Cortland Corsones

In the above-entitled cause, the Clerk will enter:

Defendant appeals from his conviction by a jury of violating an abuse-prevention order. We affirm.

In January 2023, the family division issued a temporary relief-from-abuse (RFA) order directing defendant to stay away from complainant and her children and not to "telephone, write to, e-mail, [or] contact plaintiff . . . in any way, whether directly, indirectly, or through a third party, with the purpose of making contact with the plaintiff, including in writing or by telephone, e-mail, or other electronic communication." In February 2023, the State charged defendant with violating the temporary RFA order by sending a message to complainant's friend on February 10, 2023, stating: "You can tell that slam pig [complainant's first name] thanks for the RFA and she will regret it."

The case was tried before a jury in August 2024. The State presented testimony from two police officers, complainant's friend, and complainant. The first police officer testified that on February 11, 2023, he served defendant with the final RFA order. During that interaction, defendant acknowledged receipt of the prior temporary order and indicated he understood that he was prohibited from contacting complainant directly or through third parties. The police officer then served defendant with a citation for violating the temporary RFA order by sending the above-quoted message to complainant's friend. The second police officer testified that he had personally served defendant with the temporary order, although he did not recall the specifics of their interaction.

Complainant's friend testified that while he was visiting complainant, defendant sent him the message quoted above. He knew that defendant sent the message, which he described as a

text message, because he had programmed defendant's number into his phone. Complainant's friend testified that he used text messages, Facebook, and Messenger interchangeably to communicate with others. He had heard defendant use the term "slam pig" before, which was not a term he commonly heard. He was confident that defendant sent the message because he had communicated with defendant using the same means to meet up in person. The State moved to admit Exhibit 5, which was a printout of a screenshot of the message. Defendant objected on the ground that it did not come from a phone number, which undermined complainant's friend's reliability. The court overruled the objection, concluding that an adequate foundation had been laid under State v. Allcock, 2020 VT 60, 212 Vt. 526, and Vermont Rule of Evidence 901.

On cross-examination, complainant's friend conceded that the printout indicated the message was sent on the Messenger app, not from a phone number. He testified that to him they were the same thing.

On redirect, complainant's friend stated that he had had prior conversations on the same Messenger account with defendant about his son. Defendant had previously had different phone numbers and Messenger accounts. When complainant's friend received a message from a new account purporting to be defendant's, he would ask defendant to tell him something only the two of them knew, to ensure it was really defendant. Complainant's friend knew the account that sent the "slam pig" message was defendant's because he had prior conversations about defendant's five children on that account and used that account to arrange an in-person meeting with defendant.

Complainant testified that she had known defendant since 2013, and they had a daughter together. On February 10, 2023, after she obtained the temporary RFA order, she was with her friend when he received defendant's message, and he showed it to her. She testified that defendant used a password on his phone "[n]inety percent of the time" and was possessive of his electronic devices.

After the State rested, defendant moved for judgment of acquittal on the grounds that the State had not proven that defendant sent the message from Rutland County or that he was served with the temporary RFA order. He further argued that the State had not properly authenticated Exhibit 5. The court denied the motion. Defendant did not present any evidence. The jury returned a verdict of guilty. This appeal followed.

Defendant argues that the court erred in denying his motion for judgment of acquittal because there was insufficient evidence that he authored the "slam pig" message. This Court applies the same standard as the trial court in assessing a motion for judgment of acquittal. State v. Cameron, 2016 VT 134, ¶ 5, 204 Vt. 52. "[W]e view the evidence in the light most favorable to the State, excluding any modifying evidence, and determine whether it is sufficient to fairly and reasonably convince a trier of fact that the defendant is guilty beyond a reasonable doubt." State v. O'Dell, 2007 VT 34, ¶ 4, 181 Vt. 475; see V.R.Cr.P. 29(a) (stating court shall enter judgment of acquittal if "evidence is insufficient to sustain a conviction of such offense"). Because "[a] jury is in the best position to weigh facts and deliver a verdict," an acquittal will be granted "only when there is no evidence to support a guilty verdict." Cameron, 2016 VT 134, ¶ 5.

Defendant was charged with violating 13 V.S.A. § 1030(a), requiring the State to prove that he "intentionally commit[ted] an act prohibited by a court . . . in violation of an abuse prevention order" after being served with notice of the contents of that order. Viewed in the light most favorable to the State, the evidence was sufficient for the jury to find beyond a reasonable doubt that defendant committed the offense by attempting to contact complainant through the message to complainant's friend. Complainant's friend testified that he had coordinated in-person meetings with defendant using the account through which the message was sent, which bore defendant's name. State's Exhibit 5, which contains the message, corroborated this testimony because it showed that the two were arranging a meeting after the message was sent. The message used an uncommon term, "slam pig," that complainant's friend had heard defendant use before, and it referred to complainant by name and the existence of an RFA. While defendant argues that the message was remote in time from the date the temporary RFA order was issued, State's Exhibit 7 showed that the final RFA hearing was held on the date that the message was sent, supporting an inference that defendant sent it in response to what occurred that day. Complainant's friend also testified that he previously asked the account holder the names of defendant's five children to confirm that it was defendant, and the account holder answered that question correctly. Complainant and her friend both testified that defendant typically used a password on his phone and was possessive of his devices, suggesting that it was unlikely that someone else was using his phone to send the message. Taken together, this evidence was sufficient to convince a reasonable jury that defendant authored the message. See State v. Jones, 2008 VT 67, ¶ 18, 184 Vt. 150 (explaining that in case based largely on circumstantial evidence, "we must consider the evidence as a whole" in determining whether evidence is sufficient to support conviction, "even though each individual piece of circumstantial evidence might otherwise be easily explained").

Defendant argues that our decision in State v. Allcock supports a judgment of acquittal. There, we held that social media accounts must be authenticated using the same standard as other evidence, which is "whether sufficient evidence exists to support a finding that the matter in question is what its proponent claims." 2020 VT 60, ¶ 9 (alteration and quotations omitted). The State in that case presented five facts to authenticate Facebook messages it claimed were authored by the defendant: the Facebook page from which the messages were sent was associated with someone with the defendant's name, the account was registered to someone with the defendant's name, the purported recipient called the police, the police concluded the account belonged to the defendant, and the messages contained information about the case. Id. ¶ 16. We concluded that this evidence was insufficient to authenticate the messages because it was possible that the account was fictitious, the police officers' conclusions were irrelevant, and there was nothing about the content of the messages that showed the author was personally familiar with the facts of the case. Id. ¶¶ 17-23. We explained that the State could have called the recipient of the messages to testify about why he believed the messages were from the defendant; presented evidence that the Facebook account had distinct information, photos, or information about the crime that were not in the public domain; or connected the defendant to the IP address; but it did none of these things. Id. ¶¶ 24-25.

Here, unlike in Allcock, the State presented testimony from the recipient of the message, who plausibly explained why he believed the message was from defendant. Most notably, he had communicated with defendant using the account to arrange an in-person meeting. Defendant also provided him with specific information that confirmed the account was defendant's, and the message in question used an unusual term that he had heard defendant use before and referred to

the RFA proceedings which had recently concluded.  This evidence was significantly stronger than that presented in <u>Allcock</u> and was sufficient to support the jury's conclusion that defendant authored the message.  We therefore see no basis to disturb defendant's conviction.

<u>Affirmed</u>.

BY THE COURT:

_____
Nancy J. Waples, Associate Justice

_____
Christina E. Nolan, Associate Justice

_____
Michael P. Drescher, Associate Justice

4